1999 ME 112

**Robert W. CRISPIN et al.**

v.

**TOWN OF SCARBOROUGH et al.**

Supreme Judicial Court of Maine.

Argued June 9, 1999.
Decided July 16, 1999.

Peggy L. McGehee (orally), David B. McConnell, Gregory B. Poitras, Perkins, Thompson, Hinckley & Keddy, Portland, for plaintiffs.

Sally J. Daggett (orally), Deborah M. Mann, Jensen, Baird, Gardner & Henry, Portland, for defendant Maine Life Care Retirement Community, Inc. Christopher L. Vaniotis (orally), Bernstein, Shur, Sawyer & Nelson, P.A., Portland, for defendant Town of Scarborough. Barry Zimmerman, U. Charles Remmel II, Kelley, Remmel & Zimmerman, Portland, for de-

fendant Homer, Adams, Osgood, Osgood and Hodgdon.

Before WATHEN, C.J., and RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

SAUFLEY, J.

[¶ 1] Robert Crispin and other plaintiffs [1] appeal from a judgment of the Superior Court (Cumberland County, *Mills, J.*) involving a challenge to a proposed development in the Town of Scarborough. Although the Crispins raise multiple issues on appeal, we address only those issues meriting discussion, and affirm the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] Robert and Kathleen Crispin own a parcel of shorefront property, containing a single residence, near the Higgins Beach community in the Town of Scarborough. Maine Life Care Retirement Community, Inc., is a nonprofit corporation that owns an option to purchase a large parcel of property surrounding the Crispins' property. Maine Life Care plans to construct a retirement community on that parcel. The property to be developed consists of approximately 138 acres. Approximately 42 of those acres would be developed, and 96 would remain open land. According to Maine Life Care, the development will be a continuing care retirement facility. It is intended to serve the housing, healthcare, and financial security needs of its elderly residents. It will include 160 independent living apartments, 20 assisted living units, and 40 skilled nursing rooms, as well as an additional 40 independent living units in the proposed "cottage area" of the development. The development will also include a hairdressing shop, an automated

teller machine, and a small convenience store, all of which are intended for the use of the residents only.

[¶ 3] The property on which Maine Life Care plans to construct this development was, under the Scarborough Zoning Ordinance, in part within a Rural Residence and Farming District (R–F), in part within a Residential District (R–3), and in part within a Resource Protection District (R–P). Because the existing zoning ordinances would not have allowed all of the proposed facility to be placed on the subject property, Maine Life Care sought a contract zoning agreement with the Town. The retirement community project and its proposed contract zoning agreement received the support of some residents of the Town, but was met by opposition from other residents, including the Crispins.

[¶ 4] After multiple hearings, the Scarborough Planning Board gave a favorable recommendation to the Town Council, concluding that the contract zoning agreement was a reasonable use of the land, and tentatively gave its approval to the planned subdivision. It conditioned its approval on the final approval of the proposed contract zoning by the Scarborough Town Council and on the Council's determination that the rezoning was consistent with the Town's comprehensive plan. The Town Council ultimately gave final approval to the contract zoning, thereby satisfying the conditions set forth by the Planning Board for its final approval. The Crispins and other residents of Scarborough filed an appeal pursuant to M.R. Civ. P. 80B, making several claims that the Planning Board had illegally · approved Maine Life Care's proposal.

[¶ 5] The Crispins also claimed in a second complaint, which was later joined

1. The appellants are Robert Crispin, Kathleen Crispin, Stephen Seabury, Leslie Seabury, L.A. Hibbard, Audrey Hibbard, Robert Hoy, Marian Hoy, Charles Harvey Warren, Leon Ahlquist, Ann Ahlquist, William Stroud, William Holt Jr., Deborah Lee, Gretchen Mikeska, Donna Adams, Leeann Hanson, Elizabeth Holt, Harry Moody, Richard P. Herrera, Bradford Seabury, Ann Seabury, Mario Iacopucci, Muriel Townsend, and Nannette D'Amour. All are residents of the Town of Scarborough. We will refer to the appellants collectively as "the Crispins."

by other residents of Scarborough, that they were denied due process of law and other statutory rights by the Scarborough Town Council when it considered and ultimately approved Maine Life Care's proposal.[2] The Crispins would later add to this action a claim that the Town of Scarborough committed an unconstitutional taking when it approved the contract zoning agreement with Maine Life Care. Maine Life Care filed a counterclaim, seeking declaratory judgment that it had the right to use the property as planned and, in a separate count, seeking to quiet title to the private roadway.[3] The Crispins then filed a separate complaint alleging that Maine Life Care's proposed use of the land adjacent to the Crispins' parcel would constitute an illegal trespass on the Crispins' right to use a private road traversing that land, and that Maine Life Care had slandered the Crispins' title to their property.[4] All of these actions were ultimately consolidated by the Superior Court.

[¶ 6] The Superior Court disposed of a number of the issues at the summary judgment stage of the proceedings. It entered summary judgment in favor of the Town on the Crispins' unconstitutional taking claim, as well as on those portions of their due process claim in which it was alleged that a member of the Town Council was biased and that the contract zoning was inconsistent with the Town's comprehensive plan. It also entered summary judgment in favor of Maine Life Care on the Crispins' slander of title claim.

[¶ 7] On the Crispins' appeal under Rule 80B, the Superior Court, after argument, affirmed the decisions of the Town of Scarborough. While the remaining proceedings were pending, however, the Scarborough Planning Board approved several amendments to the subdivision plan submitted by Maine Life Care. The Superior Court allowed the Crispins to consolidate the appeal from that decision with the pending proceedings. The Superior Court then affirmed the decision of the Town on the second of the Crispins' appeals under Rule 80B.[5]

[¶ 8] A nonjury trial was then held on the issues that remained before the Supe-

2. Along with the Crispins, Alexander and Barbara S. Pratt were abutting landowners and originally plaintiffs in this action; since the complaint was filed, however, Alexander Pratt has died. Barbara Pratt has apparently sold her abutting property and has not joined in this appeal. The defendants named in this action were the Town of Scarborough, the Scarborough Town Council, Michael Martin (a member of the Town Council), the Scarborough Planning Board, and Maine Life Care Retirement Community, Inc.

3. Later, Maine Life Care voluntarily dismissed without prejudice the count in its counterclaim in which it sought to quiet title to the roadway.

4. The defendants named in this action were, in addition to Maine Life Care, the original property owners who had agreed to give Maine Life Care the option to purchase the property for its planned development. Those property owners were Doris Homer, Patricia P. Adams (in her individual capacity and as trustee of the Doris F. Homer 1991 Nominee Trust), Margaret J. Osgood, Sarah F. Osgood, and Frank G. Hodgdon Jr.

5. In their appeal from the approval of amendments to the plan, the Crispins argued that the Planning Board abused its discretion by considering and approving the amendments to the plan for the proposed development because the Town's attorney was associated with a law firm that had represented a real estate broker in the negotiations of the sale of the subject property to Maine Life Care. Several times during the course of the proceedings, the Town's attorney fully disclosed the details of the alleged conflict and stated that he believed he could represent the Town consistently with his obligations under the Code of Professional Responsibility. In addition, he offered to withdraw from representation of the Town if any of the members of the Planning Board wished. The Planning Board fully and publicly considered the disclosure by its long-time attorney and affirmatively sought his continuing representation. The Crispins have failed to demonstrate any bias or prejudice on the part of the Town's attorney, and we find no error in the Planning Board's decision or in the Superior Court's action. *See Toussaint v. Town of Harpswell*, 1997 ME 189, ¶ 11, 698 A.2d 1063, 1066–67.

rior Court. The Superior Court entered judgment in favor of the defendants with respect to all of those remaining issues, and, after resolution of a number of post-judgment motions, the Crispins appealed.

[¶ 9] The Crispins have raised several issues on appeal. We address only the following: (1) the separate responsibilities of the Planning Board and the Town Council when both contract zoning and subdivision approval are sought by an applicant; (2) the public's opportunity for notice and hearing when the Town is considering a proposal for contract zoning; and (3) the Crispins' individual claims regarding their property rights in an easement over the parcel to be owned by Maine Life Care.

## II. RESPONSIBILITIES OF THE PLANNING BOARD AND TOWN COUNCIL

■ [¶ 10] The Crispins, on appeal of the Superior Court's resolution of their 80B action, argue that the Planning Board failed to satisfy its obligation, set out at 30–A M.R.S.A. § 4404(9) (1996), to decide whether Maine Life Care's proposed subdivision was consistent with the Town's comprehensive plan. Because the Superior Court acted as an intermediate appellate court, we review the Board's decision directly for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *See Herrick v. Town of Mechanic Falls*, 673 A.2d 1348, 1349 (Me.1996).

[¶ 11] In its review of any application for a proposed subdivision, the Scarborough Planning Board is required to find, *inter alia*, that "[t]he proposed subdivision conforms with [the Town's] duly adopted ... comprehensive plan." 30–A M.R.S.A. § 4404(9). *See* 30–A M.R.S.A. § 4403(5), (6) (1996); *accord* SCARBOROUGH, ME., SUBDIVISION REGULATIONS § 3(I) (1994) (requiring the Planning Board, "in evaluating any proposed subdivision of land within the Town of Scarborough" to determine that the subdivision "[i]s in conformance with ... the [Town's] Comprehensive Plan").

The Planning Board also has the general responsibility under the Town's zoning ordinance to "review all requests for amendments or changes [to the zoning ordinance] and [to] make its recommendations to the Town Council regarding the land use implications of the request." SCARBOROUGH, ME., ZONING ORDINANCE § II(G)(6) (1996). This particular proposal required the Planning Board to consider both Maine Life Care's subdivision application and the accompanying request for a zone change of the subject property.

[¶ 12] The request for a zone change in this case was to be accomplished through the "contract zoning" provisions in the Town's zoning ordinance. Under those provisions, the Planning Board was required to conduct a public hearing on Maine Life Care's proposed contract zoning agreement, and to provide notice of this hearing to the public and to neighboring landowners. *See id.* § II(I)(1); *accord* 30–A M.R.S.A. § 4352(8) (Supp.1998). At the public hearing, the Board was permitted to simultaneously consider Maine Life Care's subdivision application and the proposed contract zoning agreement. *See id.* § II(I)(3). With regard to the proposed contract zoning agreement, as with any proposed zoning amendment, the Planning Board's responsibility was to make a recommendation to the Town Council regarding the land use implications of the proposed rezoning. *See id.* § II(G)(6). The Town Council, however, was charged with the ultimate authority to decide whether or not to rezone. *See id.* § II(I)(5). In order to approve the proposed contract zoning agreement, the Town Council was required to find that the rezoning would remain consistent with the Town's comprehensive plan. *See id.* § II(I).

[¶ 13] The members of the Planning Board understood that the Town Council had the ultimate authority to approve a contract zoning agreement and that the Council was required to determine whether the rezoning was consistent with the

Town's comprehensive plan. Certain language of exclusivity in the Scarborough Zoning Ordinance created some initial uncertainty on the part of the Board concerning its role in the factfinding process:

> Contract zoning ... is authorized for zoning map changes when the Town Council, *exercising its sole and exclusive judgment* ... determines that it is appropriate to change the zoning district classification of a parcel of land [to] allow reasonable uses of the land ... *which remain consistent with the Town of Scarborough Comprehensive Plan.*

*Id.* § II(I) (emphasis added). The Board interpreted this language in the zoning ordinance to mean that the Town Council had the primary responsibility of making findings on whether the proposed project would be consistent with the Town's comprehensive plan—a finding which was also required for approval of Maine Life Care's subdivision application. Members of the Board repeatedly voiced their concern that they should not intrude into the decision-making process of the Council, which they recognized as a separate and distinct factfinder.

[¶ 14] Nonetheless, the Planning Board also had a responsibility to determine whether the proposed subdivision was consistent with the comprehensive plan. The Board, therefore, ultimately approved the plan for Maine Life Care's proposed subdivision, but conditioned its approval of the plan on the Town Council's decision. Specifically, with respect to Maine Life Care's subdivision proposal, the Board voted to find that,

> if the Contract Zoning Agreement is approved by the Town Council, *the subdivision will be in conformance with the Comprehensive Plan,* the Zoning Ordinance and the subdivision regulations.

(Emphasis added.) By granting conditional approval on these terms, the Board fulfilled its obligation to find that the subdivision was consistent with the comprehensive plan. *See* 30-A M.R.S.A. § 4403(5)(C) (allowing the Board to grant conditional approval to a subdivision application).

[¶ 15] The Board's interpretation of the Town's subdivision regulations, its zoning ordinance, and the applicable statutes was not unreasonable, and its actions were designed to comply with all three. The Board and the Town Council balanced their responsibilities in a reasonable manner: both ultimately fulfilled their obligations to find that the proposed development complied with the Town's comprehensive plan. Contrary to the Crispins' argument, therefore, the Planning Board did not fail to fulfill its obligation to make this finding.[6]

[¶ 16] Furthermore, we find *no* error in either the Town Council or the Planning Board's finding that the proposed development was, in fact, consistent with the Town's comprehensive plan. The Scarborough Comprehensive Plan was adopted by the Planning Board and the Town Council in 1994, and comprises approximately 300 pages of documents, complete with detailed maps and diagrams. It sets forth many policies and goals for land use in the Town: for example, the Town should "maintain and, where possible enhance, a mix of village, suburban and rural lands," and "there should be ample opportunity for economic development and expansion of jobs for both the local and regional populations." SCARBOROUGH, ME., COMPREHENSIVE PLAN 16-1 (1994). The Town Council specifically found that the proposed development would be consistent with many of the comprehensive plan's goals, including those of fostering and ac-

---

6. To the extent that the Board's discussions in deliberations appeared to create an ambiguity on issues related to the comprehensive plan, any question about the Board's determination was resolved at a subsequent joint workshop between the Planning Board and the Town

Council on Maine Life Care's proposed project, when the members of the Planning Board reiterated their agreement with the conclusion that the proposed development was consistent with the Town's comprehensive plan.

commodating a diverse population in the Town, *see id.* at 15–1, promoting a pattern of land use that respects the Town's natural resources, *see id.* at 15–5, and assuring open spaces needed for the protection of wildlife and natural systems, *see id.* at 15–12. These findings are not clearly erroneous, and are sufficient to support the conclusions of the Town Council and the Planning Board. *See Ogunquit Sewer Dist. v. Town of Ogunquit,* 1997 ME 33, ¶ 13, 691 A.2d 654, 658; *LaBonta v. City of Waterville,* 528 A.2d 1262, 1264–65 (Me.1987).

## III. NOTICE AND OPPORTUNITY TO BE HEARD

[¶ 17] The Crispins argue that the procedure by which the Scarborough Town Council approved the rezoning for Maine Life Care's proposed development unfairly denied them notice and an opportunity to be heard. The Superior Court, after a trial on the merits, held that the procedures followed by the Town Council did not violate the Crispins' constitutional or statutory rights. We review the Superior Court's factual findings for clear error, *see Calaska Partners Ltd. v. Corson,* 672 A.2d 1099, 1104 (Me.1996), and review its legal conclusions de novo, *see Collins v. Trius, Inc.,* 663 A.2d 570, 572 (Me.1995).

■ [¶ 18] The Crispins first assert that contract zoning is a "quasi-judicial" act, entitling them to enhanced procedural protection under the state and federal constitutions. We have held, however, that "[z]oning is a legislative act." *See F.S. Plummer Co. v. Town of Cape Elizabeth,* 612 A.2d 856, 861 (Me.1992) (quoting *Benjamin v. Houle,* 431 A.2d 48, 49 (Me. 1981)). Moreover, the Legislature has explicitly allowed zoning ordinances to "include provisions for conditional or contract zoning." 30–A M.R.S.A. § 4352(8) (Supp. 1998). Generally, members of the public are not entitled to protection under the Due Process Clause when their property rights are adversely affected by the legislative acts of government. *See id.* (citing *Bi–Metallic Inv. Co. v. State Bd. of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 60 L.Ed. 372 (1915)). The Legislature has nonetheless required that the public be "given an adequate opportunity to be heard in the preparation of a zoning ordinance," 30–A M.R.S.A. § 4352(1) (1996), and be "given [notice of a public proceeding] in ample time to allow public attendance," 1 M.R.S.A. § 406 (1989). Because the protections afforded by these statutes exceed any level of procedural protection that would be required by either constitution, we need not address the Crispins' constitutional claims.[7]

### A. Opportunity to be Heard

■ [¶ 19] The Crispins' primary complaint is that they were not afforded sufficient opportunity to be heard at the full public hearing before the Town Council on

---

7. Although we have reviewed municipalities' zoning procedures under constitutional standards, *see Vella v. Town of Camden,* 677 A.2d 1051, 1054 (Me.1996) (finding "no evidence ... that public notice was constitutionally deficient"); *F.S. Plummer Co.,* 612 A.2d at 861–62 (finding that "[t]he notice provided was constitutionally sufficient"), we have never explicitly extended a specific right to procedural due process to an abutting landowner adversely affected by a zoning ordinance. Other courts have, however, concluded that zoning, as a legislative act, does not entitle those indirectly affected to the protection of constitutional due process. *See, e.g., Rogin v. Bensalem Township,* 616 F.2d 680, 693–94 (3d Cir.1980) (holding that the protections of procedural due process did not extend to homeowners whose property was rendered less valuable by amendments to a township's zoning ordinance), *cert. denied, sub nom. Mark–Garner Assocs., Inc. v. Bensalem Township,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981); *see also County Line Joint Venture v. City of Grand Prairie, Texas,* 839 F.2d 1142, 1144–45 (5th Cir.1988) (citing *Rogin*), *cert. denied,* 488 U.S. 890, 109 S.Ct. 223, 102 L.Ed.2d 214 (1988); *Collier v. City of Springdale,* 733 F.2d 1311, 1314 n. 5 (8th Cir.1984) (citing *Rogin*), *cert. denied,* 469 U.S. 857, 105 S.Ct. 186, 83 L.Ed.2d 120 (1984); *Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield,* 719 F.Supp. 75, 83–84 (D.R.I.1989) (citing *Rogin*), *aff'd,* 907 F.2d 239 (1st Cir.1990).

October 29, 1997, when the proposed contract zoning agreement with Maine Life Care was considered. At that meeting, any person wishing to address the Town Council, either for or against the zoning change, was given three minutes to make initial comments, and was allowed a second chance to speak after everyone present had been given an opportunity to speak once.

[¶ 20] Municipalities must give the public an "adequate opportunity to be heard in the preparation of a zoning ordinance." 30–A M.R.S.A. § 4352(1). The public, therefore, had a right to address the Scarborough Town Council at the public hearing on the proposed contract zoning agreement. This statutory right, however, was not unlimited. Even when the opportunity to be heard has constitutional dimensions, "[t]here must be a limit to individual argument in such matters if government is to go on." *Bi–Metallic*, 239 U.S. at 445, 36 S.Ct. 141. Here, the circumstances required the Town Council to strike a fair and reasonable balance between its interest in efficiency and the public's right to speak.

[¶ 21] The Superior Court did not err in concluding that the record of the municipal proceedings demonstrated that the Crispins were provided with an adequate opportunity to be heard at the October 29 meeting. In light of the number of people who wished to address the Town Council, both for and against the project, the Council's decision to limit initial comments to three minutes represented a reasonable balancing of the interests of the public. Any deficiency in the initial opportunity provided to the Crispins was cured by the offer of the Town Council to allow their attorney to speak, essentially without limit, after each person who wanted to speak

had been heard.[8] In addition, the Crispins were allowed to submit abundant written material to the Town Council, which the Town Council reviewed in advance of the hearing and considered during its deliberations. Viewed in context, the Crispins were given a substantial opportunity to speak directly to the Council before its vote on the proposed contract zoning agreement.

[¶ 22] The Crispins also argue that they were denied their right to be heard before the Town Council at its November 17 meeting, at which the Council took final action on a motion to reconsider its prior approval of the contract zoning agreement with Maine Life Care. They did not, however, have a "right" to be heard at the November 17 meeting. They had been given a substantial opportunity to be heard on the original motion to approve the contract zoning agreement and had participated throughout the approval process, presenting the Town Council with copious information in opposition to the rezoning. Under the Town Council's procedural rules, the Crispins were not entitled to an additional opportunity to be heard on a council member's motion to reconsider. *See* Rules and Orders of the Town Council of the Town of Scarborough, Maine, §§ 19, 31(1) (Feb. 4, 1970).[9] The Town Council already had before it the entirety of the evidence presented throughout the process by the Crispins. Neither the applicable statute nor the Town's rules required the Town Council to provide the Crispins with an additional chance to be heard before the Town Council's vote on this motion. *See* 30–A M.R.S.A. § 4352(1).

### B. Notice

[¶ 23] The Crispins next argue that some members of the public were given

---

8. In fact, the Town Council did not limit the number of times that a person who wished to speak could address the Council. The attorney who represented the Crispins spoke twice, for a total of about nine minutes. She chose not to speak a third time and declined the Town Council's offer to use the time that

would have been allotted to other members of the audience.

9. The Crispins were allowed to address the Town Council immediately after the Council had voted on the motion to reconsider.

insufficient notice of a final administrative hearing before the Town Council. The record reflects that official bodies of the Town met at least twenty-two times over the course of a year to consider Maine Life Care's proposed development. The Crispins' complaint regarding notice addresses only the final meeting of the Town Council on November 17, 1997, at which the Council considered, for the second time, a motion to reconsider its original decision to approve the contract zoning proposal.

■ [¶ 24] Despite their claims that they were given insufficient notice, many of the appellants, including the Crispins themselves, were present for the Town Council's November 17 meeting. These parties cannot now complain that they were not given adequate notice of the meeting. The Superior Court correctly concluded that those appellants who were present at the November 17 meeting had waived any objection to the sufficiency of the notice that was provided. *Cf. Tryba v. Town of Old Orchard Beach,* 1998 ME 10, ¶ 3, 704 A.2d 403, 404.

■ [¶ 25] The remaining appellants argue that they were effectively given only one day's notice of the November 17 meeting, and that one day's notice was insufficient under the Freedom of Access Act, 1 M.R.S.A. §§ 401–410 (1989 & Supp.1998). *See* 1 M.R.S.A. § 406. The agenda for the November 17 meeting of the Town Council was posted in the Scarborough Town Hall on November 14, but the Town Hall was closed to the public on November 15 and 16. In addition, a notice concerning the meeting was published in the *Portland Press Herald* on November 17.

■ [¶ 26] To be sufficient under the Freedom of Access Act, notice of the Town Council meeting must have been "given in ample time to allow public attendance and . . . disseminated in a manner reasonably calculated to notify the general public in the jurisdiction served" by the Town Council. *Id.; see also* 30–A M.R.S.A. § 4352(1) (requiring the opportunity for public par-

ticipation in the preparation of a zoning ordinance). This standard required the Town Council to provide notice that was sufficient to give the public a reasonable opportunity under the circumstances to be present during the Town Council's deliberations.

[¶ 27] Notwithstanding the short time provided by the notice for the November 17 meeting, the Superior Court did not err in finding that the notice that was provided to the appellants of this meeting of the Town Council was sufficient under the applicable statutes. *See* 1 M.R.S.A. § 406; 30–A M.R.S.A. § 4352(1); *see also F.S. Plummer Co.,* 612 A.2d at 862 (holding notice sufficient under 30–A M.R.S.A. § 4352(1)). Under the circumstances of this case, where the appellants had been very involved throughout the hearing process, where there had been ample notice and opportunity to be heard at prior public hearings, where most appellants actually attended the meeting, and where the process had been ongoing for many months, the notice was provided in sufficient time to allow the public a reasonable opportunity to be present during the proceedings.

## IV. PROPERTY CLAIMS

[¶ 28] Finally, the Crispins argue that the Superior Court erred in concluding that the prospective use of their easement by Maine Life Care would not unreasonably burden their own use.

■ [¶ 29] The Crispins' property claims address the use of a private road, known as Piper Road, connecting their shorefront property to Spurwink Road. While Piper Road lies on property that will be wholly owned by Maine Life Care, a binding dedication agreement entered into by the previous owner of the Crispins' property gives the Crispins "[t]he right to enter and transit [Piper Road] for passage by foot, vehicle or otherwise." The Crispins argued before the Superior Court that their rights in Piper Road will be substantially impaired by Maine Life Care's plans

to improve the road and to use it as the primary means of access for its proposed development. The primary issue before the Superior Court was, therefore, whether the dedication agreement, to which both parties were bound, allowed such use of the servient tenement by Maine Life Care, its future owner. *See Guild v. Hinman,* 1997 ME 120, ¶ 6, 695 A.2d 1190, 1193.

[¶ 30] The construction of language in an easement deed is a question of law, which we review de novo. *See Fine Line, Inc. v. Blake,* 677 A.2d 1061, 1063 (Me.1996). If the language of the deed is unambiguous, the scope of a party's easement rights is determined solely from that language. *See id.* (quoting *Rancourt v. Town of Glenburn,* 635 A.2d 964, 965 (Me. 1993)). If the language of the deed is ambiguous, however, the scope of a party's easement rights may be determined based on extrinsic evidence of the original parties' intent. *See id.* at 1063–64. If extrinsic evidence is admitted, the Superior Court must "ascertain the objectively manifested intention of the parties in light of circumstances in existence recently prior to the conveyance." *Guild,* 1997 ME 120, ¶ 7, 695 A.2d at 1193. We will uphold the Superior Court's factual findings regarding the original parties' intent unless we find them to be clearly erroneous. *See id.; White v. Zela,* 1997 ME 8, ¶ 3, 687 A.2d 645, 646.

[¶ 31] The Superior Court found that the language of the dedication agreement itself was ambiguous, and thus admitted evidence relevant to the intent of the original parties to that agreement. *See Badger v. Hill,* 404 A.2d 222, 225 (Me.1979). Based on the evidence presented at trial, the court found that the signatory parties intended that the dedication agreement would facilitate eventual commercial development of their properties, and that the proposed development in this case would not create conditions inconsistent with that intent.

[¶ 32] The Superior Court did not err in concluding that the language is ambiguous. The dedication does reference the possibility of future development of the servient property. It does not, however, delineate the nature or agreed upon parameters of any future development. ·For example, the agreement contains the following statement:

> The grant of easements and the benefits, covenants, terms, conditions, restrictions and purposes created by this Dedication shall also extend to any *additional lots or parcels resulting from one or more divisions of a portion or portions of the Benefitted Property.*

(Emphasis added.) While the language of the dedication unambiguously anticipated some future development of the servient property, the Superior Court did not err in concluding that there was ambiguity as to whether the parties intended to allow a development as substantial as that proposed by Maine Life Care. *See Fine Line,* 677 A.2d at 1064.

[¶ 33] At trial, ample evidence existed to support the Superior Court's conclusion that the parties intended the dedication to allow the use of the easement proposed by Maine Life Care. For example, Margaret Osgood, an original party to the dedication agreement testified that she believed the purpose of the agreement was

> to protect us in a sense so we could further develop the land when we chose to sell it so *there wouldn't be any limitations* on what we could do with our land at a later date.

(Emphasis added.) Other parties to the agreement had a similar recollection, and the Superior Court apparently found this testimony to be credible. *See VanVoorhees v. Dodge,* 679 A.2d 1077, 1080 (Me. 1996) (credibility determinations solely for presiding judge as trier of fact). Therefore, we find that the Superior Court's conclusion was not clearly erroneous. *See White,* 1997 ME 8, ¶ 3, 687 A.2d at 646.

[¶ 34] The Crispins also argue, first, that Maine Life Care's planned construc-

tion of an angled curb bordering portions of Piper Road will impair the effective use of their easement, *see Badger,* 404 A.2d at 227, and, second, that Maine Life Care's planned construction of an emergency access road between Piper Road and the Higgins Beach area will overburden the right of way, *see generally Taylor v. Nutter,* 687 A.2d 632, 635–36 (Me.1996). The Superior Court, however, found, as a matter of fact, that the proposed curb would not obstruct the Crispins' right to traverse the right of way and that the proposed emergency access road would be "gated and used only as a secondary emergency route."[10] These findings of fact were not clearly erroneous. *See White,* 1997 ME 8, ¶ 3, 687 A.2d at 646.

## V. CONCLUSION

[¶ 35] We need not address the remaining issues raised by the Crispins. Finding no error in the actions of the Town Council or the Board, and finding no error in the decisions and judgments of the Superior Court, we must affirm the judgments.[11]

The entry is:

Judgment affirmed.

---

10. Any confusion regarding the angle of the curbing was harmless given the court's conclusion, supported by record evidence, that a vehicle could drive over the angled curb without difficulty.

11. The appellants also challenged the finality of the judgment entered by the Superior Court, alleging deficiencies in the docketing of certain orders of the court. Contrary to their argument, the Superior Court thoroughly addressed each of the many claims involved in this case, and the docketing was adequate to inform the parties of the substance of the court's orders. *See* M.R. Civ. P. 79(a). Any clerical errors in the docketing of the court's orders did not substantively affect the judgment. *Cf. Bramson v. Richardson,* 412 A.2d 381, 383 (Me.1980).