STATE OF MAINE
WASHINGTON, SS.

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-96-081

TEH-WAS-1/3/2000

RICHARD S. PETTIGROW, et al,

Plaintiffs

vs.

**DECISION AND ORDER**

EDNA G. CARR, et al,

Defendants

This matter is before the Court on the plaintiffs' amended complaint for declaratory relief regarding the ownership of land (Count I) and the location of a right of way (Count II), for trespass and wrongful cutting (Count III), for costs and expenses (Count IV), for trespass and nuisance (Counts V and VI), and for trespass (VII). Also pending is the defendants' counterclaim for declaratory relief regarding the ownership of land (Count II), for trespass (Count III), and for intentional infliction of emotional distress (Count IV).[1]

## BACKGROUND

The plaintiffs own a large ocean shorefront parcel of land on the southeasterly side of Route 92 in Bucks Harbor, Machiasport, Maine.[2]

---

[1] Count I of the counterclaim in the nature of a quiet title action was orally dismissed by the defendants at the close of the evidence. Count II of the counterclaim seeks the same relief through the procedural vehicle of a declaratory judgment action. *See Dowley v. Morency*, 1999 ME 137, ¶ 11, 737 A.2d 1061, 1066.

[2] *See* Plaintiffs' Exhibit 5.

1

Within this large parcel, the defendants own a smaller landlocked piece bounded on all four sides by the plaintiffs' land. Each of their titles is traceable to a common grantor, Alice Sprague, who is the grandmother of the plaintiff Richard Pettigrow.[3]

The defendants' lot was created in 1905 by an outsale from Alice Sprague to Rene Schoppe.[4] The outconveyance included rights of way over what is now the plaintiffs' land for purposes of access and egress to Route 92 and to the ocean. The rights of way have been consistently and ambiguously described in the subsequent deeds in the defendants' chain of title, as follows:

> "Granting also a right of way to the herein conveyed lot, as heretofore used and a right of way to the shore and the landing."

This ambiguity was not clarified or resolved by the deeds in the plaintiffs' chain of title since they make no reference to the rights-of-way at all.[5]

Although the right of way "to the shore and the landing" (hereafter "Ocean right of way") has generated some discussion in this case, the location of the right of way between Route 92 and the plaintiffs' property (hereafter "Access right of way") is the primary focus of this litigation.

---

[3]The plaintiffs' property is generally depicted as Lot 12 and 12a and the defendants' property as Lot 18 on the Tax Map for the Town of Machiasport. *See* Plaintiffs' Exhibit 82.

[4]*See* Plaintiffs' Exhibit 1. When Ms. Schoppe died, title passed to her son, Hollis Schoppe. In 1952 Mr. Schoppe conveyed the parcel to George and Lily Budd, who were the parents of the defendant Edna Carr. *See* Plaintiffs' Exhibit 2. The Budd's deeded the property to Edna in 1989 and she conveyed it to herself and the other defendant, Marylee Carr, in 1991. *See* Plaintiffs' Exhibit 3 .

[5]*See* deed from Alice M. Sprague to Ralph C. Sprague, dated January 27, 1933, and recorded in the Washington County Registry of Deeds in Book 395, Page 476. On October 29, 1956, the property was conveyed by Ralph Sprague to Richard Pettigrow and then by Richard Pettigrow to both plaintiffs by deed dated October 23, 1975.

DECISION

## Location of Defendants' Land

Count I of the complaint and Count II of the counterclaim ask the court to determine and declare the location of the boundaries of the defendants' land. In a boundary dispute "what the boundaries are is a question of law, but the location of the boundaries on the face of the earth is a question of fact." *White v. Zela*, 1997 ME 8, ¶ 3, 687 A.2d 645, 646.

The deed description of defendants' property begins at a point measured "forty-seven and one-half feet (47 1/2) northwesterly from the northwest corner of the barn" that was located on the plaintiffs' land. *See* Plaintiffs' Exhibit 2.[6] Although the barn was torn down in 1963 or 1964, there is sufficient remaining evidence of its foundation to identify the northwest corner which serves as a monument for determining the beginning point of the description of the defendants' land. The other monuments noted in the deed at each of the four corners of the parcel can no longer be located. However, from the established point of beginning the deed description then turns and runs along specific courses and distances as plotted and shown on Plaintiffs' Exhibit 81, being a survey entitled "Standard Boundary Survey of a Portion of Land of Richard & Nettie Pettigrow of land southeast of STATE ROUTE 92 Machiasport, Washington

---

[6]The property description in the original outsale deed by Alice Sprague in 1905 begins at a point "which is 47 1/2 feet Southeasterly of the Southeast corner of grantor's barn". However, all subsequent deeds in the defendants' chain of title begin at a point "which is 47 1/2 feet Northwesterly of the Northwest corner" of the barn. It seems clear from all of the evidence that the references to "Southeasterly" and "Southeast" in the original deed are scriveners errors and that the subsequent deeds are correct.

County, Maine DATE: November 1996 By <u>Sheppard & Garster</u> Professional Land Surveyors" (hereafter "Sheppard & Garster survey"). Accordingly, the court finds by a preponderance of the evidence that the location and dimensions of the defendants' parcel on the face of the earth are correctly shown and designated as "N/F Edna G. & Marylee Carr" on the Sheppard & Garster survey.

## Location of Access Right-of-Way

Count II of the complaint and Count II of the counterclaim ask the court to determine and declare the location of the rights of way that benefit the defendants' land.

There is significant dispute as to the location of the Access Right of way. The relevant deeds only note that its location is wherever it was "used" <u>before</u> the conveyance by Alice Sprague to Rene Schoppe on August 10, 1905.[7] Where the language of a deed is ambiguous, the scope of a party's easement rights may be determined based on extrinsic evidence of the original parties' intent from which the court must "ascertain the objectively manifested intention of the parties in light of circumstances in existence recently prior to the conveyance." *Crispin v. Town of Scarborough*, 1999 ME 112, ¶ 30, 736 A.2d 241, 250; *see also Anchors v. Manter*, 1998 ME 152, ¶ 8, 714 A.2d 134, 138 ("[w]e construe the deeds to give effect to the intent of the grantor to create an easement"). Resort to extrinsic evidence is necessary in this case.

The location of the Access Right of Way is clearly marked on the face

---

[7]See Plaintiffs' Exhibit 1.

4

of the earth and is generally shown as a "gravel road" and "Right of Way" on the Sheppard and Garster survey.[8] In this analysis, the Access Right of Way will be considered in two segments. The first segment extends in a southeasterly direction from the easterly or southeasterly sideline of Route 92 along the plaintiffs' property and then turns and runs in an easterly and northeasterly direction around the southerly and southeasterly sides of the plaintiffs' house to a point southerly of the southwest corner of the defendants' property, as shown on the survey.[9] There is no significant dispute over the location of this first segment of the Access Right of Way.[10]

The location of the second segment of the Access Right of Way is the primary focus of this dispute. The defendants assert that this part of the right of way continues from the ending point of the first segment and splits into two divergent travel ways on the face of the earth: one that continues in a northeasterly direction to the southwesterly sideline of the defendants' land at a point near its southwest corner; and the other that continues in a

---

[8]Regrettably, the survey does not include specific courses and distances for the various rights of way shown on it. Nonetheless, having conducted a view of the premises, this court finds that the survey does generally depict the locations of those rights of way as they appear on the face of the earth.

[9]For ease of understanding, the ending point of this "first segment" in the analysis is at the intersection of the right of way, as shown on the survey, with an imaginary line between the southwest corner of the defendants' property and the northwest corner of the plaintiffs' "store" building shown on the survey.

[10]There is evidence that at one time the Access Right of Way ran from Route 92 in a southeasterly direction along the plaintiffs' property, then turned in a southeasterly direction running between the plaintiffs' house and existing barn to the previously described ending point of the "first segment" of the right of way [it should be noted that this existing barn is not the barn referred to in the defendants' deed]. However, the evidence is clear that around 1969 there was an agreement among the property owners not to use that part of the way since it ran too close to the plaintiffs' house. Instead , they thereafter used the more southerly path around the southeasterly and easterly side of the plaintiffs' home.

5

southeasterly direction by, but not adjacent to, the southwesterly sideline of the defendants' land to a point southwesterly of its southeast corner, then turns and runs in a northerly direction to that southwesterly sideline at a point near the southeast corner of the property, which point is also northerly or northeasterly of the former barn referred to in the defendants' deed and marks the intersection of this divergent path with three other rights of way, all as is generally shown on the Sheppard & Garster survey. Contrarily, the plaintiffs argue that the defendants' land is only benefitted by the first described divergent path that intersects the defendants' property near its southwest corner.

Although there is no extrinsic evidence of Alice Sprague's intentions concerning the location of the Access Right of Way, there is credible evidence that as early as 1946, when the defendants' property was still owned by Rena Schoppe, it had a semi-circular driveway that was presumably used by her. The driveway intersected the southwesterly boundary of the property at two points that were consistent with the locations of the two divergent paths of the second segment of the right of way described above. Use of the circular driveway and both divergent ways continued with the subsequent owners of the property, George and Lily Budd, who acquired the property in 1952. The Budd's were the parents of the defendant Edna Carr, who continued the use of the circular driveway and both divergent paths of the Access Right of Way after she acquired title to the property in 1989. This continued until the mid-1990's when the defendants installed a new septic system in front of their cottage that

6

effectively foreclosed their use of the western portion of the circular driveway and the first divergent path of the right of way. Since then, the defendants have exclusively used the second divergent path of the right of way to its point of connection with the easternmost part of the driveway near the southeast corner of their property.

It is relevant that the Access Right of Way as claimed by the defendants is a clearly marked road or travel way on the face of the earth that is readily observable and has been used as a means of access to the defendant's land for decades. It is also relevant that in 1933, Alice Sprague conveyed what was to become the plaintiffs' property to Ralph Sprague and Agnes Colbeth. In 1951, Ralph Sprague and Agnes Colbeth deeded a right of way to Lucia Carter, Herbert Rose and Alison R. Daw.[11] The right of way was actually in two parts: (1) a right in common with others along the same course as the Access Right of Way as claimed by the defendants to a point north of the former barn on the plaintiffs' property that was torn down in 1963 or 1964; and (2) an exclusive right of way that continued in a northeasterly direction from common right of way to lands owned by Carter, Rose and Daw. The common right of way is described in the deed as being

> "twelve (12) feet in width, and is to be used for all purposes of a way, by foot, teams, or vehicles. It is the intent of this instrument that the portion of the right of way which runs from the town road to the point north of the barn is to be used in common with the grantors, their heirs, or assigns ...."

Plaintiffs' Exhibit 81D.

Based on all of the foregoing, the court finds that the defendants'

---

[11] See Plaintiffs' Exhibit 81D.

7

claims as to the location of the Access Right of Way are correct.

## Location of Ocean Right-of-Way

There is no significant dispute as to the location of the Ocean Right of way. The court finds by a preponderance of the evidence that it begins at a point in the southwesterly sideline of the Access Right of way southwesterly of the southwest corner of the plaintiffs' house and runs in a general southwesterly and southerly direction to the shore of Broad Cove, also know as Starbird Cove, and its location on the face of the earth is generally shown and designated on the Sheppard & Garster survey as "Apparent location of 'right of way to the shore and the landing'". The landing itself no longer exists but its former location is generally shown and designated on the Sheppard & Garster survey as "Approximate Location of wharf and landing" and is also marked by posts shown in the photo marked Plaintiffs' Exhibit 16.

## Trespass, Nuisance and Wrongful Cutting by Defendants

As to the claims in Counts III, V and VI of the complaint that allege acts of trespass, wrongful cutting and nuisance by discharging surface water and wastewater onto the plaintiffs' property, the court cannot find by a preponderance of the credible evidence that these claims against the defendants, or either of them, are valid.

As to the claim in Count VII of the complaint that alleges acts of trespass by the defendants by placing gravel on part of the disputed portion of the Access Right of Way, the court finds that the defendants did cause that area to be excavated and graveled. More specifically, the defendants

8

contracted for the minor excavation and grading of a 300 square foot area measuring twelve feet by twenty-two feet upon which three yards of gravel approximately three inches deep was placed. However, the court finds that the defendants had and have the right to use that area for access to their property and that the work performed and the materials used were consistent with that permitted use and were of a quantity that was reasonable and only minimally necessary to maintain the area for that purpose. These acts do not constitute a trespass as alleged by the plaintiffs.

**Trespass by Plaintiffs**

As to the claim in Count III of the counterclaim that alleges acts of trespass by the plaintiffs, the court cannot find by a preponderance of the credible evidence that these claims against the plaintiffs, or either of them, are valid.

**Intentional Infliction of Emotional Distress**

As to the claim in Count IV of the counterclaim that alleges the intentional infliction of emotional distress, Edna Carr testified that she suffered nervousness, stress and disappointment as a result of the plaintiffs' conduct, that she went to a doctor, and that she took prescribed medication for about one month which cost her $17.99. The conduct alleged is that the plaintiffs, or either of them, occasionally blocked the defendants' rights of way, sabotaged their well, went into their home without permission and planted fast growing trees to block the defendants' view of the ocean.

The evidence regarding the trespass into the home makes clear that the acts are not alleged to have occurred during the defendants' ownership

9

of the property. Rather, they occurred, if at all, when the property was owned by George and Lily Budd. As to the alleged sabotage of the defendants' well, Edna Carr discovered beach sand and bricks in the well shortly after the property was deeded to her in 1989. There is no credible evidence as to how or when those materials were placed in the well.

The plaintiffs did block the Ocean Right of Way with a rope, but it was not done to prevent the defendants from using it. Rather, it was blocked to keep the public and trespassers from using it. The plaintiffs did briefly block the disputed area of the Access Right of Way with a large truck in order to prevent the defendants from using it. However, the plaintiffs did not delay in removing the obstacle when told to do so by a law enforcement officer who had been summoned by the defendants.

As to the trees located on the plaintiffs' property, the court finds that in the early 1980's when the defendants' parcel was owned by George and Lily Budd, the plaintiffs' planted a row of poplar trees near and along the Access Right of Way. The row begins at a point on the southwesterly side of the Access Right of Way nearly opposite the southwest corner of the defendants' property and continues in an easterly and southeasterly direction along the southerly and southwesterly sideline of the Access Right of Way and the southwesterly sideline of another right of way leading to land now or formerly of Ray F. Thompson, all as generally shown on the Sheppard & Garster survey. The trees have now matured in height and width to the point that they obstruct a significant part of the view of the ocean from the defendants' property. However, there is no credible evidence that the trees

10

were planted to annoy or harm the former owners or the defendants. As significant, the defendants were or ought to have been aware of the trees before they acquired title to their property.

Intentional infliction of emotionally distress consists of intentionally or recklessly causing severe emotional distress by engaging in extreme or outrageous behavior. *Rubin v. Matthews Intern. Corp.*, 503 A.2d 694, 699 (Me. 1986). "Severe distress" means that "no reasonable person could be expected to endure it." *Latremore v. Latremore*, 584 A.2d 626, 631 (Me. 1990). Although severe emotional distress is usually "manifested by shock, illness or other bodily harm," it may be inferred from the defendant's conduct alone. Id. at 633. Employing this standard, the court finds that the defendants, and Edna Carr in particular, have not presented sufficient evidence in support of their claim that the plaintiffs intentionally inflicted emotional distress upon them.

The entry is:

On **Counts I and II of the Complaint** and **Count II of the Counterclaim**, it is adjudged and declared that the defendants, Edna Carr and Marylee Carr, have record title to and are the owners in fee simple of a parcel of land, together with the buildings and improvements thereon, situated on the easterly or southeasterly side of Route 92 in Machiasport, Maine, but not adjacent thereto, as described in a Warranty Deed from George and Lily Pearl Budd to Edna G. Carr, dated July 31, 1989, and recorded in the Washington County Registry of Deeds in Book 1591, Page 318, and that the location and dimensions of such parcel are correctly shown and designated as "N/F Edna G. & Marylee Carr" on a survey entitled "Standard Boundary Survey of a Portion of Land of Richard & Nettie Pettigrow of land southeast of STATE ROUTE 92 Machiasport, Washington County, Maine DATE: November 1996 By Sheppard & Garster Professional Land Surveyors", together with the following rights of way:

11

(1) A right of way in common with others for purposes of access and egress by foot or by vehicles between Route 92 and the defendants' land, above described, which right of way is generally shown and designated as a "gravel road" and "Right of Way" on the above-referenced survey and extends in a southeasterly direction from the easterly or southeasterly sideline of Route 92 along the plaintiffs' property, then turns and runs in an easterly and northeasterly direction around the southerly and southeasterly sides of the plaintiffs' house to a point southerly of the southwest corner of the defendants' property, then continues from said point and splits into two divergent travel ways: one that continues in a northeasterly direction to the southwesterly sideline of the defendants' land at a point near its southwest corner and the other that continues in a southeasterly direction by, but not adjacent to, the southwesterly sideline of the defendants' land to another point southwesterly of the southeast corner of the defendants' land, then turns and runs in a northerly direction to the southwesterly sideline of the defendants' land at a point near its southeast corner, all as shown on the above-referenced survey; and

(2) Another right of way in common with others generally shown and designated on the above-referenced survey as "Apparent location of 'right of way to the shore and the landing'" and which right of way begins at a point in the southwesterly sideline of the above-described right of way at a point southwesterly of the southwest corner of the plaintiffs' house and runs in a general southwesterly and southerly direction to the shore of Broad Cove, also know as Starbird Cove, all as shown on said survey.

On **Counts III, IV, V, VI and VII of the Complaint**, Judgment for the Defendants.

On **Counts III and IV of the Counterclaim**, Judgment for the Plaintiffs.

This Judgment shall be binding upon the parties to this action, their heirs, successors, personal representatives and assigns. Each of the parties is responsible for their own costs.

Dated:   December 29, 1999

Justice, Superior Court

FILED AND ENTERED

ATTEST   JAN 3 - 2000

MARILYN E. BRALEY Clerk

12

Date Filed___9/10/96_____    Washington_____    Docket No.___CV 96-81_____
                                County

Action Declaratory Judgment–Trespassed–Treble Damages

DONALD L. GARBRECHT
LAW LIBRARY

JAN 11 2000

Richard S. Pettegrow and Nettie T. Pettegrow vs.    Edna G. Carr and Marylee Carr

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Alan D. Graves, Esq.<br>P.O. Box 397  66 Water Street<br>Machias, Maine 04654-1022 | Francis J. Hallissey, Esq.<br>P.O. Box 436<br>Machias, Maine 04654 |

Date of
Entry

13