STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. AP-00-096

CLIFFORD G. DOW, II,          Jun 13   3 54 PM '01    REC -

          Plaintiff

     - v.                                         ORDER ON 80B APPEAL

TOWN OF NEW GLOUCESTER,

          Defendant

## FACTUAL BACKGROUND

The Witham Heights Subdivision ("the Subdivision") was originally created by a series of transactions beginning in 1994 without New Gloucester Planning Board ("Board") approval. Record ("R.") at 2. Ronald and Tammy Albert purchased a 6 acre lot in an area zoned for 2 acre house lots, hoping to subdivide that lot in the future. Id. at 4. After the Town discovered the unapproved transactions, it required the developers and all other owners of the land to apply for after-the-fact approval from the Board. Id. at 2. On April 1, 1997, the Board approved the 8-lot Witham Heights subdivision. Id. This approval was given pursuant to the "Open Space Subdivision" provisions of § 5.1.7 of the New Gloucester Zoning Ordinance and, at the request of the applicants, was treated as a "cluster" subdivision allowing slightly smaller lots in exchange for an open space parcel. Id. The Alberts' lot was also approved by the Board on April 1, 1997 as subdivision lot 8. Id. at 19.

The Alberts have owned what is now lot 8 since 1994. Id. They bought the 6.09 acre parcel with the idea that it could be divided into three parcels. At the time of the 1997 approval, the Alberts deeded a portion of their lot to the Witham Heights Road Association. Id. at 4, 19. This allowed the private access road in the

Subdivision, known as Targett Road, to meet the minimum width standards for private roads. Id. at 4. The Alberts' remaining land totalled 5.35 acres. Id. at 19.

In May, 2000, the Alberts filed an application with the Board seeking to divide Lot 8 into three lots. Id. at 45. The Board reviewed the application at its June 6, 2000, June 20, 2000, July 11, 2000, September 19, 2000. October 17, 2000 and November 8, 2000 meetings. See R. at 36, 42, 45-47, 57-58, 60-61, 65-66. At the October 17, 2000 meeting, a motion to approve the Alberts' request failed by a vote of 3 to 3. Id. at 61. At the Alberts' written request to reconsider that decision, the Board voted on November 8, 2000 to approve the Alberts' application by a vote of 3 to 2. Id. at 66.

Clifford Dow, owner of land abutting the Subdivision as well as lot 6 in the Subdivision, now appeals the approval of the Alberts' application. See id. at 18. For the following reasons, the decision of the New Gloucester Planning Board is affirmed.

DISCUSSION

**I. Subdivision of Lot 8**

Mr. Dow argues that the Zoning Ordinance prohibits the Board from allowing the Alberts to further subdivide their lot. The Town's treatment of the Alberts' application as a revision to the original Subdivision plan is consistent with provisions of both the Subdivision Regulations and the Zoning Ordinance, however.

The Zoning Ordinance provides that lots for dwelling units "created as part of an open space subdivision shall not be further subdivided." New Gloucester, Me.,

2

Zoning Ordinance ("Ordinance") § 5.1.7(C)(2)(d). The Subdivision Regulations permit an entire subdivision plan to be revised to create additional lots. New Gloucester, Me., Subdivision Regulations ("Regulations") § 9.1. While the Ordinance provides that its requirements supersede any inconsistent provisions in the Regulations, these two provisions do not actually conflict. See Ordinance § 5.1.7(C). Because the Ordinance does not prevent revision of the original subdivision plan to create more lots through subdivision, the Board properly treated the Alberts' application as a revision of the original Subdivision plan.

## II. Net Residential Density

Both the Zoning Ordinance and the Subdivision Regulations define "net residential density" as the "number of dwelling units per residential acre." Id. § 2.2 at 2-15; Regulations § 3 at 3-2. The Ordinance and the Regulations also both define "net residential acreage" as the "net acreage of a parcel or site that is generally suitable for development in its natural state. Net residential acreage shall be determined by subtracting unsuitable and marginal areas from the gross area of the parcel." Ordinance § 2.2 at 2-14; Regulations § 3 at 3-2.

The following are considered unsuitable for development and 100% of the acreage of these areas must be deducted from the gross land area:

> 1. Land that is cut off from the main parcel by a road, or by existing land uses and where no means of access can be provided, so that the land is isolated and unavailable for building purposes or common uses.
> 2. Land situated below the normal high water mark of abutting waterbodies.
> 3. Land within the 100-year floodplain as identified by Federal Flood Boundary and Floodway Maps or Federal Flood Insurance Rate Maps.

4. Land within a Resource Protection District L
5. Land which has been created by filling or draining a pond or wetland.
6. Land area consisting of unreclaimed gravel pits.
7. Very Poorly Drained Soils . . . .

Ordinance § 2.2 at 2-14; Regulations § 11.3. Poorly drained soils and somewhat poorly drained soils are considered marginally suitable for development and only 50% of these areas must be deducted from the gross land area. Ordinance § 2.2 at 2-14; Regulations § 11.3.

### A. Original Net Residential Acreage Calculations

The calculations for the original subdivision plan are as follows:

| | | |
|---|---|---|
| A. | Total Lot Area | 27.27 acres |
| B. | Total Wetland Area | 3.78 acres |
| C. | Open Space | 2.02 acres |
| D. | Road Area | 1.78 acres |
| E. | Net Residential Acreage | 21.71 acres |

It is apparent that the net residential acreage was calculated by subtracting the total wetland area and the road area from the total lot area. Mr. Dow argues that the calculations in this original plan are incorrect because the open space was not subtracted from the total lot area. A deduction of the open space results in a net residential acreage of 19.69 acres. Dividing that number by 10, the number of lots that will exist in the subdivision if the Alberts subdivide, results in 1.97 acre lots. Because this is less than the 2 acre minimum lot size permissible in the Town of New Gloucester, Mr. Dow argues that the Board erred in allowing the Alberts to subdivide their lot.

4

Mr. Dow's interpretation of and reliance upon the original calculations is incorrect for two reasons. First, nothing in the Regulations or Ordinance permit the deduction of open space from the total land area to arrive at the net residential acreage. See Ordinance § 2.2 at 2-4; Regulations § 11.3. His calculation of the net residential acreage as 19.69 acres is therefore incorrect.

Second, the calculations in the original plan improperly include a deduction for road area. The Ordinance requires net residential acreage to be determined by subtracting unsuitable and marginally suitable areas from the total lot area. Ordinance § 2.2 at 2-14. Unlike the Regulations, it does not provide for a road allowance deduction. See id.; Regulations § 11.3(C). The Ordinance provides, however, that for purposes of both the Ordinance and the Regulations, the term net residential acreage must be defined and interpreted in accordance with the Ordinance. See Ordinance § 2.2 at 2-1. Because the Ordinance interpretation of net residential acreage controls, there can be no deduction for road area.

B.      Calculations in the Revised Subdivision Plan

The Board did not err in its calculation of the net residential acreage on the revised subdivision plan. That plan subtracts only the very poorly drained soils (the wetland area of 3.78 acres) from the total lot area (27.27 acres), for a net residential acreage of 23.50.[1] See 11/21/00 Revised Subdivision Plan. Dividing this number by 2, the minimum lot size for the Rural Residential District, reveals that the subdivision plan allows for eleven (11) lots. See Ordinance § 4.4.3(C)(2).

---

1 The actual amount when subtracted is 23.49.

## III. Targett Road

Mr. Dow argues that the proposed subdivision plan revision should not have been approved because Targett Road was not constructed to Town standards for private roads. The Board's scope of review regarding applications to revise subdivision plans is limited to those portions of the plan that are proposed to be changed. Regulations § 9.3. Because the Alberts' proposed revisions affected only the configuration of Lot 8, Targett Road's conformity with Town standards was not properly before the Board.

The Appellant also argues that the Alberts failed to submit a required engineer's plan and profile of the proposed road. Contrary to this contention, the Alberts were not required to submit an engineer's plan and profile of the proposed road with their application to revise the Subdivision plan. See id. § 9.2 (requiring the application to include "enough supporting information to allow the Board to make a determination that the proposed revisions meet the standards of these regulations").

## IV. Due Process

The Appellant contends that he was denied an opportunity to speak at the November 8, 2000 meeting despite the fact that he was told by the Board at the October 17, 2000 that he could speak at other public hearings if the issue of the Alberts' proposed subdivision were to be presented again. Because Mr. Dow did not have a right to be heard at the November 8, 2000 meeting, he was not denied due process.

In Crispin v. Town of Scarborough, 1999 ME 112, ¶ 22, 736 A.2d 241, 248, the plaintiffs argued that they were denied their right to be heard at the Town Council meeting in which the Council took final action on a motion to reconsider its prior approval of a contract zoning agreement. The Law Court held that the plaintiffs did not have a right to be heard at that meeting because they had been given a substantial opportunity to be heard on the original motion to approve, participated throughout the approval process and were not entitled to an additional opportunity to be heard on a motion to reconsider under the Town Council's procedural rules. Id.

Similar to Crispin, Mr. Dow was given a substantial opportunity to be heard at the previous meetings and participate in the process. He provided his views and interpretations of the Ordinance and Regulations with regard to the proposed subdivision during the July 11, 2000 and October 17, 2000 Board meetings. See R. at 45-47, 60-61.

Steve Libby, the Board Chairman, recognized that the Board received a memorandum dated October 11, 2000 from Mr. Dow. October 17, 2000 Minutes at 1. In this memorandum, Mr. Dow submitted twenty-one questions to the Town Attorney regarding the Witham Heights Subdivision, eighteen of which specifically addressed the Alberts' proposed subdivision. R. at 10-16. The letter was made available to the public at the October 17, 2000 meeting. R. at 60.

Mr. Dow participated extensively in the October 17, 2000 meeting. See October 17, 2000 Minutes at 44-62. At that meeting, he made the same arguments in

7

opposition to the proposed subdivision of Lot 8 as currently before the Court: that subdivision is contrary to the Zoning Ordinance, Targett Road is not properly located, and the net residential acreage was not properly calculated. Id. at 52-59. The rest of his presentation concerned personal matters that were not properly before the Board and did not address the Alberts' proposed subdivision. See id. at 44-52, 62.

Although Mr. Dow questioned the Board about its failure to allow persons on Targett Road a chance to speak at the November 8, 2000 meeting, there is no indication in the record or in the Board minutes that he attempted to or was prevented from speaking at that meeting. The Chairman answered that question by stating that the public was not given a chance to speak because the Board was considering its previous decision. November 8, 2000 Minutes at 41.

V.     Nitrates Study

Mr. Dow contends that the plan should not have been approved because a nitrates study was not provided to the Board. The July 11, 2000 minutes reflect that the hydrogeological work was completed and submitted to the Board, however. R. at 45.

VI.    Change of Vote

Mr. Dow argues that Board member Jean Libby changed her vote at the November 8, 2000 meeting to get the application off the table. Regarding the argument about the applicability of a particular zoning ordinance section to the Alberts' application, Ms. Libby did state, "I don't care. Vote it and get it out of here." November 8, 2000 Minutes at 23. Ms. Libby indicated later in the meeting, however,

8

that she voted in favor of the amendment based on the Town attorney's recommendations. Id. at 40. Although Ms. Libby stated that she did not necessarily agree with her vote, there is no indication that she did not have a basis for voting to grant the application. See id.

## VII.  No New Factual Information

Mr. Dow argues that the Board could not properly reconsider its previous decision because no new factual information was presented at the November 8 meeting. There is no requirement that new factual information be presented before a Board reconsiders a previous decision. Further, the record indicates that the Board heard substantial legal argument prior to taking its vote. See id. at 11-23, 36-39.

The entry is

The decision of the New Gloucester Planning Board is AFFIRMED.

Dated at Portland, Maine this 12th day of June, 2001.

Robert E. Crowley
Justice, Superior Court

9

Date Filed __12-6-00__      __Cumberland__     Docket No. __AP00-96__

County

Action ___80B Appeal___

CLIFFORD G. DOW II

TOWN OF NEW GLOUCESTER
RON ALBERT - amended 1-23-01
TAMMIE ALBERT - amended 1-23-01

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| PRO SE 926-5432 | Christopher S. Neagle,Esq. |
| 150 Targett Road | P.O.Box 586 |
| New Gloucester ME 04260 | Portland,ME.04112-0586 |
| | |
| | Ronald Albert Pro Se |
| | 11 Moody Street, Lewiston 04240 782-3492 |
| | |
| | Tammi-Lee Albert, Pro Se |
| | 71 Targett Road, New Gloucester ME 04260 |

| Date of Entry | |
|---|---|
| 2000 Dec. 7 | Received 12-6-00. |
| | Summary Sheet filed. |
| | 80B Goverment Appeal-Complaint filed. |
| """" | Plaintiff's motion to bar the sale of real estate pending the outcome of this appeal filed. |
| "" | Proposed order filed. |
| "" | Plaintiff's notice pursuant to M.R.Civ.P. (7) (c) filed. |
| "" | Plaintiff's certificate of service filed. |
| "" | On 12-7-00. |
| | Briefing schedule mailed. Plaintiff's brief due 1-15-01. |
| Dec. 19 | Received 12-18-00 |
| | Christopher S. Neagle,Esq Acceptance of service on behalf of Town of New Gloucester with attachment filed. |
| Dec. 27 | Received 12-27-00. |
| | Defendant's Memorandum in Opposition to Motion to Bar Sale of Real Estate filed. |
| "" | Appearance of Christopher Neagle Esq. for the Town of New Gloucester filed. |
| 2001 Jan. 09 | Received 01/09/01: |
| | Plaintiff's Request for Extension of Time with attachment filed. |
| Jan. 11 | Received 1-11-01. |
| | Plaintiff's motion to require defendant to sign acknowledgement of receipt submitted by plaintiff with attachments filed. |
| "" | Plaintiff's notice pursuant to M.R.Civ.P. (7)(b)(1) filed. |
| "" | Plaintiff's certificate of service filed. |
| "" | Proposed Order filed. |
| "" | Plaintiff's motion for extension of time filed. |
| "" | Plaintiff's notice pursuant to M.R.Civ.P. (7)(b) (1) filed. |
| "" | Plaintiff's certificate of service filed. |
| "" | Proposed Order filed. |