### F.S. PLUMMER CO., INC., et al.,

v.

### TOWN OF CAPE ELIZABETH, et al.

Supreme Judicial Court of Maine.

Argued June 16, 1992.

Decided Aug. 20, 1992.

---

Peggy L. McGehee (orally), Frederick B. Finberg, Perkins, Thompson, Hinckley & Keddy, Portland, for plaintiff.

Michael H. Hill (orally), Monaghan, Leahy, Hochadel & Libby, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

The Town of Cape Elizabeth appeals from a Superior Court judgment (Cumberland County, *Browne, A.R.J.*), in favor of Fred Plummer and F.S. Plummer Co., Inc. (Plummer) ordering the Town to rezone certain property owned by Plummer. On appeal, the Town contends that the court erred in its review of a 1981 amendment to the Town's zoning ordinance. Plummer cross appeals, challenging a summary judgment in favor of the Town on Plummer's due process claim. We vacate the judgment.

Plummer purchased twelve lots in Cape Elizabeth's East Field subdivision, eight in 1969 and the remaining four in 1975. In 1981, Plummer still owned nine lots in the subdivision and all the lots were zoned as Residential A–District. In December 1981, the Town enacted comprehensive zoning amendments affecting several different areas throughout the town. The amend- ments were passed after several months of discussion during which public hearings were held.

The public hearings were advertised by an announcement published in a local newspaper. Four of Plummer's remaining nine lots were affected by the amendments, which reclassified those lots as part of the Resource Protection District (RPD). The reclassification made development of the property for residential purposes impossible. Plummer contends that it was unaware of the reclassification of its property until 1987.

In 1986 and 1987, Plummer improved the four lots, providing them with sewer stubs and water service. Plummer gave the Town an easement along one of the lots so the Town could provide sewer service to certain properties, among them the four lots owned by Plummer. Plummer alleges that Town officials on several occasions told Plummer the lots could be developed.

When Plummer learned that its property was part of the RPD, it filed a formal application for a change of zone with the Town Council. According to ordinance procedure, the matter was referred to the Planning Board. The Planning Board held a public hearing and found that the lots had many wetland characteristics and that the soils on the lots were inappropriate for development. For those reasons the Planning Board recommended that the Town Council not reclassify Plummer's property. The Town Council accepted the Planning Board's recommendation and denied Plummer's application for a zone change. In March of 1989, the Town gave Plummer a building permit for one of the four lots that was only partially located in the RPD.

Plummer filed a seven count complaint against the Town. Plummer sought direct judicial review of the Town Council's decision pursuant to M.R.Civ.P. 80B. Its complaint also alleged denial of due process, equitable estoppel, taking, and excessive regulation; and requested declaratory and injunctive relief. The Town moved to dismiss the Rule 80B complaint, contending the Town Council's decision was a legislative act and therefore not directly reviewa-

ble by the Superior Court under Rule 80B. The court (Cumberland County, *Lipez, J.*) denied the Town's motion.

Both parties filed motions for a summary judgment and the court (Cumberland County, *Delahanty, C.J.*) granted the Town a summary judgment on Count II (due process) and dismissed Counts IV and V (taking and excessive regulation) because the court found that Plummer had not applied for a variance and therefore had not exhausted its administrative remedies. The parties proceeded with the Rule 80B complaint.

The court (*Browne, A.R.J.*) reaffirmed the earlier order granting the Town a summary judgment on Plummer's due process claim, holding that the earlier order had established the law of the case. The court reinstated Counts IV and V with respect to the Rule 80B complaint and remanded the matter to the Town Council for further findings of fact, holding that the Town Council's failure to issue adequate findings of fact and conclusions of law made intelligent appellate review impossible.

The Town Council submitted its findings, which were similar to those made by the Planning Board and included additional findings of fact supporting the Town's contention that Plummer had no basis for its claims of taking and equitable estoppel. The court found that the Town's reclassification of Plummer's property had been erroneously premised on the belief that the lots contained Sebago Mucky Peat. The court held that the Town Council's denial of Plummer's request for a zoning change was not supported by substantial evidence in the record and constituted an abuse of discretion. The court ordered the Town to reclassify the lots as residential. This appeal followed. Plummer cross appeals the court's earlier decision to grant the Town a summary judgment on Plummer's due process claim. Because the court ordered the lots reclassified it did not reach a decision on Plummer's claims of taking and equitable estoppel.

### I

■ Rule 80B does not create judicial authority to review governmental action or inaction. The rule provides the *procedure* when governmental conduct is subject to direct judicial review by statute or when judicial intervention is otherwise available by law. Because the Town Council was performing a legislative function, as opposed to an administrative or quasi-judicial function, the court erred in undertaking a direct judicial review in the nature of an appeal and in remanding the matter to the Town Council for findings of fact.

### II

■ Judicial review of a zoning ordinance amendment may be obtained by an action seeking a declaratory judgment. *See LaBonta v. City of Waterville*, 528 A.2d 1262, 1263 (Me.1987). Plummer sought a declaratory judgment pursuant to 14 M.R.S.A. §§ 5954 and 5957 (1980) and the issues underlying its petition seeking declaratory relief are the same as those that were argued before the court when the court undertook direct judicial review of the Town Council's action. In the interest of judicial economy, and because we find the record sufficiently complete to permit appellate review, we will address the issues raised by Plummer's request for a declaratory judgment and injunctive relief.

In reviewing Plummer's claim alleging that the zoning ordinance amendment reclassifying its property and the subsequent denial of its zone change request should be found null and void, we must determine whether the ordinance is constitutional and whether the zoning of Plummer's land is in basic harmony with the Town's comprehensive plan. *LaBonta*, 528 A.2d at 1263–1265, *see also* 30–A M.R.S.A. § 4352(2) (Supp.1991).

■ The ordinance itself is presumed to be constitutional. *Warren v. Municipal Officers, Etc.*, 431 A.2d 624, 628 (Me.1981). The burden is on Plummer to show by "clear and irrefutable evidence that it infringes on paramount law," and to establish "the complete absence of any state of facts that would support .... the ordinance." *Id.* In order for the ordinance to

be a valid exercise of the Town's police power it must 1) provide for the public welfare, 2) use means appropriate to the desired ends, and 3) not be exercised in an arbitrary or capricious manner. *Tisei v. Town of Ogunquit*, 491 A.2d 564, 569 (Me. 1985).

■ Among the goals of the RPD is the protection of the environment and water quality. This goal provides for the public welfare and is a valid object of the exercise of the Town's police power. *See Hall v. Board of Environmental Protection*, 498 A.2d 260 (Me.1985). Restricting development in wetland areas is an appropriate means of achieving those objects.

Under the Town's zoning ordinance, the RPD consists of:

> All other areas so designated on the official zoning map, and any apparent wetlands contiguous thereto ... unless the applicant for a permit for use or development of any land within the foregoing descriptions shall demonstrate by way of an on-site survey that the land does not constitute either "wetlands" ... or "Sebago Mucky Peat" type soil, or coastal dunes.

Plummer's property was designated as part of the RPD on the official zoning map. The ordinance provides a reasonable mechanism for landowners who feel their property was improperly included in the RPD to petition for its reclassification. Although Plummer was able to demonstrate that its property did not contain Sebago Mucky Peat, the Town found, and Plummer concedes the fact, that its property contains wetlands. Therefore, the Town Council's adoption of the ordinance cannot be said to be arbitrary or capricious and the Town's amendment of its zoning ordinance, the effect of which was the reclassification of Plummer's property, was a valid exercise of its police power.

■ To successfully challenge the Town Council's denial of its zone change request Plummer must show that the Town's decision was inconsistent with the comprehensive plan. *LaBonta*, 528 A.2d at 1265. The Town Council found that these lots contained wetlands, and that filling the lots could create runoff and flooding problems. The comprehensive plan states that "certain areas of the community should be excluded from development because of the natural conditions of the land. Where these conditions can be shown to have a substantial relationship to the public's health, safety and welfare (i.e., flood hazard or ability to support a subsurface disposal system) severe restrictions on development can and should be sustained." The comprehensive plan further contemplates that no development will occur in the RPD. We conclude that the Town Council's denial of Plummer's zone change request was in basic harmony with the comprehensive plan.

### III

■ Our review of Plummer's claim of equitable estoppel leads us to conclude as a matter of law that it is insufficiently supported in the record. In Maine, equitable estoppel may be applied to activities of a governmental official or agency in the discharge of governmental functions. *Maine School Admin. Dist. No. 15 v. Raynolds*, 413 A.2d 523, 533 (Me.1980). In assessing a claim of equitable estoppel, we review the totality of the circumstances involved, including the nature of the government official or agency whose actions provide the basis for the claim and the governmental function being discharged by that official or agency. *Id.*

■ "Proper application of equitable estoppel rests on a factual determination that the declaration or acts relied upon must have induced the party seeking to enforce the estoppel to do what resulted to his detriment and what he would not otherwise have done." *Shackford & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102, 103–104 (Me.1984) (citations omitted). The facts must also show that the reliance was reasonable. *Id.* at 104. We have held that a party seeking to estop the enforcement of a zoning ordinance bears a greater burden of proof because of "the [f]orceful public reasons [that] militate against restricting the enforcement of municipal zoning ordi-

nances." *City of Auburn v. Degrosseilliers*, 578 A.2d 712, 715 (Me.1990).

■ Plummer advances three factual bases for estopping the Town from denying its zone change request. First it claims that its property was taxed as if it were still buildable. While the Town Manager did testify that Plummer's taxes had not changed because the Town Manager was under the impression that Plummer's property was grandfathered, "equitable estoppel may not be invoked against a government official or agency in the discharge of responsibilities regarding taxation...." *Maine School Admin. Dist. No. 5*, 413 A.2d at 533. The proper course of action is an action for tax abatement, not equitable estoppel.

■ Second, Plummer points to additional testimony by the Town Manager in which he stated that Plummer and anyone else who inquired were told that previously approved building lots had been grandfathered. None of these statements was in writing. Reliance on oral unauthorized representations of a municipal official, where a written building permit is required for a project, is unreasonable as a matter of law. *Shackford*, 486 A.2d at 106.

Finally, Plummer argues that certain unnamed officials told it the lots were buildable in 1986 when Plummer granted the Town an easement across its property for the installation of a sewer system. Plummer claims that it gave the Town the easement and proceeded to provide its lots with sewer stubs and water service in reliance on these officials' misrepresentations. Once again Plummer is relying on the spoken statements of unauthorized, and in this case unnamed, officials. The Town was not estopped from enforcing the RPD ordinance as it applies to Plummer.

## IV

The Superior Court ordered the Town Council to make findings of fact pertaining to Plummer's allegation that the enactment of the ordinance and the subsequent denial of its zone change request constituted an uncompensated taking. Because the court granted the relief requested in Plummer's Rule 80B complaint it never resolved this issue. We remand this matter to the Superior Court for a determination as to whether the Town's actions constituted an uncompensated taking.

## V

■ Plummer cross appeals, arguing that the Superior Court erred when it granted the Town a summary judgment on Plummer's claim of lack of due process. Plummer contends that the notice given was both constitutionally and statutorily deficient because the Town Council was acting as an administrative or quasi-judicial entity when it amended the Town's zoning ordinances.

"Zoning is a legislative act," *Benjamin v. Houle*, 431 A.2d 48, 49 (Me.1981), and the "adoption of a zoning amendment, like [the] enactment of the original zoning ordinance is [also] a legislative act." 1 R. Anderson, *American Law of Zoning* 286 (3d ed. 1986). There is no constitutional requirement of individual notice when a legislative body conducts hearings or enacts laws. *Bi–Metallic Co. v. Colorado*, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915).

The Town Council published a legal notice announcing its intention to review proposed amendments to the Town's zoning ordinance. Over a period of ten months, several public hearings and workshops were held and a map showing the proposed changes was posted at the Town Hall. The purpose of the hearings was to decide how the existing zoning laws should be changed to bring them into conformity with the Town's new comprehensive plan, not to rule specifically on the inclusion of Plummer's land in the RPD. Moreover, the Town Council provided all property owners with a remedy if their property was improperly included in the RPD. If a landowner can show that property does not have certain natural features, the Town can reclassify the property. The notice

provided was constitutionally sufficient.[1]

There is a statutory notice requirement imposed on the Town by 30 M.R.S.A. § 4962(1) (1978), now amended and recodified at 30-A M.R.S.A. § 4352(1), that provided in 1981 that "in the preparation of the zoning ordinance, the public shall be given adequate opportunity to be heard." This requirement was satisfied when the Town published the announcement advertising the scheduled public hearing.

The entry is:

Judgment vacated. Case remanded to Superior Court for further proceedings consistent with the opinion herein.

All concurring.

1. The notice read as follows:
   LEGAL ADVERTISEMENT
   NOTICE OF
   PUBLIC HEARING
   NOTICE IS HEREBY GIVEN that the Cape Elizabeth Town Council will hold a public hearing on proposed amendments to the Cape Elizabeth ZONING ORDINANCE and ZON-ING MAP at the Cape Elizabeth Town Hall at 7:30 p.m. on Monday, December 14, 1981, which amendments would revise provisions regulating removal of topsoil and other earth materials, would alter certain existing zoning districts and designations, and would establish the minimum residential lot size in the less dense Residence A District.