STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, SS.                           CIVIL ACTION
                                        DOCKET NO. AP-08-43
                                        DHM – KEN-12/16/2009

TENANTS HARBOR GENERAL
STORE, LLC,

        Petitioner

    v.                                  ORDER

MAINE DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

        Respondent

Before the court is Tenants Harbor General Store's petition for judicial review of final agency action pursuant to 5 M.R.S.A. § 11001 and M. R. Civ. P. 80C.

This action is for review of a letter-decision by the Maine Department of Environmental Protection (DEP) that the petitioner would have to seek a variance to install underground fuel storage tanks as set forth in 38 M.R.S § 563-C. The property at issue is a general store that sells gasoline. It is undisputed that the gasoline storage tanks do not comply with 38 M.R.S. § 563-C, commonly referred to as the Siting Law, because they are within 1000 feet of a public water supply and within 300 feet of a private water supply. However, section 563-C is not retroactive, and only applies to tanks that were registered or installed after September 30, 2001. Because the tanks were in existence prior to the effective date of the statute, they were exempted from the requirement.

On February 16, 2007, Paul Volle entered into a contract to purchase Tenants Harbor from its owner, Joanne Kroll. Volle's decision was based largely on the fact that the location sold gasoline, and would therefore be a profitable acquisition considering

that he also owned a general store in a neighboring town. On June 5, 2007, the property was conveyed to Tenants Harbor General Store, LLC.[1]

Following the signing of the contract, but prior to the conveyance of the property, leakage was discovered on the inner wall of the storage tanks. For this reason, the use of the tanks ceased and the tanks were removed on May 16, 2007. Kroll filled out a form that is required to remove underground oil storage tanks. It was her understanding that if the tanks were replaced within twelve months; the tanks would continue to be exempt from the Siting Law. She did not intend to waive the rights as the property owner to have them replaced.

Volle then investigated the DEP rules for replacing underground oil storage facilities. His understanding of the rules was that the store would be grandfathered for twelve months pending the replacement of the tanks. To confirm this belief, he contacted the DEP.[2] Volle then negotiated a new price for the store, reducing the price to reflect the cost of completing the replacement of the tanks. After purchasing the store, Volle received approval by the Planning Board to replace the tanks and applied to the DEP to permit replacement. The DEP took the position that the tanks had been abandoned and that Volle's application was for a new installation, not a replacement. The Commissioner then sent Volle a letter-decision dated May 13, 2008, that stated his

---

[1] Volle having assigned his rights to the LLC.

[2] The substance of this phone call appears to be in dispute, and is relevant to petitioner's equitable estoppel argument. Petitioner claims that John Dunlap, a DEP employee, told Volle that he had a twelve-month window to replace the tanks and maintain his exempt status. The court heard live testimony on this issue at a hearing on March 27, 2009. Respondent introduced testimony of Mr. Dunlap, reflecting that Dunlap has no recollection of such a conversation occurring.

2

application was in violation of 38 M.R.S. § 563-C and he would need to seek a variance to proceed. On June 13, 2008, petitioner filed its petition for review.[3]

When a judicial review of a administrative agency's decision is pursued pursuant to M.R. Civ. P. 80C, the court reviews the agency's decision directly for abuse of discretion, errors of law, or findings not supported by the evidence. *Centamore v. Dep't of Human Servs.*, 664 A.2d 369, 370 (Me. 1995). "The administrative agency's interpretation of a statute administered by it, while not conclusive or binding on this court, will be given great deference and should be upheld unless the statute plainly compels a contrary result." *Thacker v. Konover*, 2003 ME 30, ¶ 14, 818 A.2d 1013, 1019 (internal citations quotations omitted). Because the DEP is charged with administering the underground oil facilities requirements found in 38 M.R.S. § 563-C, the court must grant deference to the DEP's construction, so long as its construction is reasonable and comports with legislative intent. *See FPL Energy Me. Hydro LLC v. Dep't of Envtl. Prot.*, 2007 ME 97, ¶ 24, 926 A.2d 1197 1204 (cert. denied, 128 S. Ct. 911 (2008)).

Petitioner asserts two separate grounds upon which the Commissioner's decision should be vacated. First, petitioner argues that the Commissioner made errors of law and fact in concluding that its application does not fit within the replacement-exemption found in the Siting Law. Second, petitioner argues that even if the court finds there was no error, the Commissioner should be estopped from denying the permit because Volle claims that the he was told by a DEP representative that he had twelve months from the date of removal to replace the tanks.

Title 38 M.R.S. § 563-C[4] provided that a person may not register or install an underground oil storage facility that is either within 1000 feet of a public water supply

³ Decisions by the Commissioner can be reviewed in the Superior Court, notwithstanding the fact that there exists a procedure for review of a commissioner decision by the Board. *See* 38 M.R.S. §§ 342(2-A), 346(1).

3

or within 300 feet of a private water supply in existence at the time of application.[5] The statute provided an exemption permitting replacement of facilities that were in existence prior to the effect date of the law, but also stated that a facility cannot remain out of service for longer than twelve months without approval of the Commissioner. 38 M.R.S. § 563-C(2).

The DEP has taken the position that petitioner's application does not fall within the definition of replacement under § 563-C. Specifically, the DEP argues that because the tanks had already been removed by the time that petitioner filed its application for replacement, the application was not truly a replacement, and was instead a new installation. The DEP interprets the statute in this manner to prevent a person from removing a non-conforming tank under the guise of replacement, then install a new tank, and claim that he or she intended to replace the tank during the period. The DEP further identifies that this policy is harmonious with the legislative intent of the Underground Oil and Ground Water Protection Law, providing that its provisions are "necessary for the general welfare, public health and public safety of the State and its inhabitants, and shall be liberally construed to effect the purposes set forth . . . ." 38 M.R.S. § 570-G.

Petitioner argues that the DEP's construction is irrational in this case. Specifically, petitioner points out that an underground oil facility cannot be out of service for more than twelve months without the approval of the DEP, which addresses the DEP's concern of persons removing tanks for an unspecified period under the guise of replacement. The interpretation of the DEP, according to petitioner, would have the

---

[4] Title 38 M.R.S. § 563-C was repealed by P.L. 2007, ch. 569, § 3. Its applicability to the dates in question has not been challenged.

[5] Subsequently, 38 M.R.S.A. § 563-C was repealed. P.L. 2007 c. 569 § 3 (effective 06/30/2008). However, Section § 563-C was in effect when the decision under review was issued on 5/13/08.

4

absurd result of a person seeking to replace a tank automatically losing its exemption the moment the original tank is removed from the ground, making replacement practically impossible.

Petitioner also argues that the DEP's construction is incongruent with the legislative intent and the statutory scheme. Specifically, 38 M.R.S. § 566-A specifies detailed requirements for the process of abandoning a tank, which is defined as a tank being out of service for a period of more than twelve months. Furthermore, petitioner also points to the requirement that an owner is required to promptly report leaks to the DEP, and that the rules require that a leaking tank be removed, but permits their replacement within twelve months.

The DEP does not argue that tanks must be immediately replaced after removal to retain their exemption under § 563-C. Rather, the DEP argues that to replace an existing tank that is ruptured or damaged, the applicant must register for a replacement prior to the removal of the tanks. In other words, the DEP is requesting that applicants declare their intent to replace a tank prior to the actual removal.

Petitioner is correct that both the statute and rules provide for a twelve-month window in which the tank may be out of service for replacement purposes. However, the rule does not provide that the owner necessarily has twelve months to decide whether or not to replace a removed tank. Rather, it merely states that replacement must be completed within twelve-months. This is a reasonable construction of the Siting Law. While Volle undoubtedly intended to replace the tank when he learned of the leak, he did not own the property and the landowner did not file a replacement application. The DEP has determined the proper procedure to distinguish between a replacement and abandonment under section 563-C is to require the applicant to file a replacement application prior to the tank's removal, rather than filing for abandonment,

5

removing the tanks, and then registering for an installation. Accordingly, there was no existing tank at the time petitioner made its application to replace the tanks and the decision of the DEP was proper.

The Law Court has described equitable estoppel as follows:

> When reviewing an equitable estoppel claim, we review the totality of the circumstances, "including the nature of the government official or agency whose actions provide the basis for the claim and the governmental function being discharged by that official or agency." *F.S. Plummer Co. v. Town of Cape Elizabeth*, 612 A.2d 856, 860 (Me. 1992). [The claimant] must prove that (1) the statements or conduct of the town planner or Board induced [the claimant] to act; (2) the reliance was detrimental; and (3) the reliance was reasonable. *Id.* Moreover, because it seeks to estop the enforcement of a zoning ordinance, and "forceful policy reasons militate against restricting the enforcement of municipal zoning ordinances," [the claimant] bears a greater burden. *City of Auburn v. Desgrosseilliers*, 578 A.2d 712, 715 (Me. 1990).

*Kittery Retail Ventures v. Town of Kittery*, 2004 ME 65, ¶ 34, 856 A.2d 1183, 1194. The Law Court has further explained that equitable estoppel can only be asserted "as a defense and cannot be used as a weapon of assault." *Tarason v. Town of S. Berwick*, 2005 ME 30, ¶ 16, 868 A.2d 230, 234.

Here, petitioner claims that it is asserting equitable estoppel as a defense against an actual government decision. Petitioner distinguishes a line of unfavorable equitable estoppel cases claiming that the claiming parties were asking the court to enjoin future action.[6] The court does not find these distinctions persuasive. Petitioner is not the target of any action by the DEP and is not asserting equitable estoppel to prevent any action from being directed at him. Rather, he is attempting to assert equitable estoppel

---

[6] *See Tarason*, 2005 ME 30, 868 A.2d 230 (claimant sought to enjoin an order to discontinue the use of a third dwelling in an apartment building, arguing that the CEO had issued permits for constructing the third dwelling with knowledge of the claimant's purpose); *Buker v. Town of Sweeden*, 644 A.2d 1042 (Me. 1994) (claimant sought review of a town's denial of his conditional use permit, claiming that the Zoning Board had lead him to believe that his permit would be approved if he acquired an authorization from DHS for his activity); *Waterville Homes v. Dep't of Trans.*, 589 A.2d 455 (Me. 1991) (claimant sought to enjoin the MDOT from changing the location of an interchange on I-95 after purchasing property that would be benefited by the original location based on representations by the MDOT).

to compel the DEP to grant him a registration to install new tanks.[7] Such relief would take the form of a mandatory injunction.

As stated above, the entry will be:

The decision of the Maine Department of Environmental Protection in the matter of Tenants Harbor General Store, LLC, certified number 7006 2150 0005 6939 9134, dated May 13, 2008, is AFFIRMED.

DATED:   12-16-09

Donald H. Marden
Justice, Superior Court

---

[7] There is a strong policy for this result. To the extent that the agency brings an action against an aggrieved party regarding matters upon which it advised the party, the Due Process considerations make it just for the agency to be enjoined and bound. However, when dealing with an applicant requesting the legal counsel of an administrative agency, the agency should not be bound if those representations are later revealed to be inaccurate and would require the agency to act inconsistent with law or policy. However, the court is distressed by the actions of the Department of Environmental Protection in this case. The regulation relied upon by the DEP is section 11, chapter 691. This makes reference to the closure of an underground oil storage facility that "has been or is intended to be out of service for a period of more than twelve months." It makes reference to "proper abandonment" of tanks. It further makes reference to "storage or disposal of removed tanks . . . ." In essence "abandonment by removal" is to be out of service for a period in excess of twelve months. The casual use of the term "abandonment" as distinguished from "removal" is completely absent from the form required to be submitted by, in this case, the seller of the facility on its form entitled Notice of Intent to Abandon (Remove). Furthermore, as explicitly found and noted by the court and an exhibit in the transcript of the March 27, 2009 hearing, the "registration general information of underground oil storage tanks" which must accompany the registration form for underground oil and petroleum products storage tanks makes no reference to a requirement that the facilities be "present" at the location at the time of registration under the terms of the exemption. Finally, nowhere in the document required to be filed with the DEP indicating a notice of intent to remove the facility, the only form available, is there an indication on the form to complete that the removal is based upon an intent to replace the facility within a twelve-month period. Notwithstanding the inability to claim equitable estoppel in this matter, neither the petitioner nor his grantor have been well served by the State of Maine agency.

7

Date Filed __6/13/08__ __Kennebec__ Docket No. __AP-08-43__
County

Action __80(c)__

J. JABAR

J. Mills
Recused

TENANTS HARBOR GENERAL STORE, LLC    vs.    MAINE DEPT OF ENVIRONMENTAL PROTECTION

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Clifford Goodall, Esq.<br>61 Winthrop St<br>Augusta, Maine | Mary M. Sauer, AAG<br>6 State House Station<br>Augusta Maine  04333-0006 |

| Date of Entry | |
|---|---|
| 6/17/08 | Petition to review administrative action rule 80C filed by Atty Goodall on 6/13/08. |
| 6/19/08 | Certified return receipt served on Steven Rowe, AAG and Commisseion Littell on 6/16/08 |
| 7/1/08 | Motion for additional time to file record filed by Atty Sauer. |
| 7/24/08 | ORDER, Jabar, J.<br>The time for filing the administrative record is hereby enlarged by 60 days and is extended to September 11, 2008<br>Copies mailed to attys. of record. |
| 9/11/08 | Administrative Record and Certification of Record, filed.  s/Sauer, AAG |
| 9/11/08 | Notice And Briefing Schedule mailed to attorneys of record. |
| 9/19/08 | Plaintiff's Motion For Taking Of Additional Evidence, Proposed Order, Request For Hearing, filed.  s/Goodall, Esq. |
| 10/10/08 | Memorandum In Opposition To Petitioner's Motion For Taking Of Additional Evidence, with Attachments A and B; Department's Motion To Supplement The Record & Incorporated Memorandum Of Law, with Attachments A and B; Request For Hearing, filed.  s/Mills, AAG |
| 10/23/08 | Petitioner's Opposition To Department's Motion To Supplement The Record, filed.  s/Goodall, Esq.  (with attachment) |
| 10/30/08 | Department's Reply to Petitioner's Opposition to Department's Motion to Supplement the Record, filed. s/Mills, AAG |

Notice of setting for __3/9/09__

sent to attorneys of record.

| Date of Entry | Docket No. _____ |
|---|---|
| 3/12/09 | ORDER, Jabar, J.<br>The petitioner's motion to take additional evidence is hereby GRANTED. The court will schedule a hearing for purpose o ftaking testimony on the issue or equitable estoppel. MSAD#15 v. Raynolds, 413 A.2d 523 (Me. 1980). Copies to attys. of record.<br><br>Hearing scheduled for March 27, 2009 at 10:30 a.m. Notice mailed to attys. of record. |
| 3/23/09 | Letter regarding hearing on Friday, filed. s/Goodall, Esq. |
| 3/27/09 | Hearing held with the Hon. Justice Joseph Jabar, presiding. Attys. present oral arguments to the court. |
| 3/30/09 | **NOTICE AND BRIEFING SCHEDULE ISSUED.** Copies mailed to attys. of record. |
| 4/14/09 | Transcript, filed. s/Drouin, CR |
| 5/22/09 | Plaintiff's Brief, filed. s/Goodall, Esq. Supplement to Administrative Record, filed. |
| 6/25/09 | Brief of Respondent, filed. s/Sauer, AAG |
| 7/10/09 | Plaintiff's Reply Brief, filed. s/Goodall, Esq. |
| 12/16/09 | ORDER, Marden, J.<br>The decision of the Maine Department of Environmental Protection in the matter of Tenants Harbor General Store, LLC, certified number 7006 2150 0005 6939 9134, dated May 13, 2008, is AFFIRMED. Copies to attys. of record. Copies to repositories |