STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  DOCKET NO. AP-10-010


BRUNSWICK FAIRFIELD,
LLC, et al.,

                    Plaintiffs
v.                                                ORDER ON DEFENDANT'S
                                                  MOTION TO DISMISS
TOWN OF BRUNSWICK,
            Defendant
and
JHR DEVELOPMENT OF
MAINE, LLC, et al.,

                    Parties-in-Interest


Before the court is the defendant's motion to dismiss count II of the plaintiffs'
complaint pursuant to M.R. Civ. P. 12(b)(6). In count II, the plaintiffs seek a declaratory
judgment under the Uniform Declaratory Judgment Act, 14 M.R.S. §§ 5951-5963.

DISCUSSION

Plaintiffs Brunswick Fairfield, LLC, Maine Course Management Company, LLC,
Austin Hotels, and Karen Klatt (the "plaintiffs") bring this action against defendant
Town of Brunswick (the "Town"). In count I of the complaint, the plaintiffs request
review pursuant to M.R. Civ. P. 80B. In count II, plaintiffs seek a declaratory judgment
pursuant to 14 M.R.S. §§ 5951-5963 to determine whether the Town complied with
statutory and Town Charter requirements.

On March 1, 2010, the defendant, through the Town Council, approved by
resolution designation of the Town of Brunswick Municipal Development and Tax
Increment Financing District and the Development Program for the Brunswick
Downtown Municipal development and Tax Increment Financing District. (Compl. ¶
17.) Along with the District, the Development Program includes tax increment

1

financing (a "TIF") with a credit enhancement provision for an inn that the parties-in-interest propose to construct within the District as part of a mixed-use development project known as Maine Street Station Project. (Compl. ¶ 23; Id. ¶¶ 13, 18.)

In their requests for relief, the plaintiffs specifically request a declaratory judgment that the Town:

(A) did not provide proper notice of the public hearing on the Development Program;

(B) failed to consider certain evidence concerning the Development Program and the credit enhancement TIF offered by some of the plaintiffs at the public hearing, violating 30-A M.R.S. § 5223;

(C) failed to consider the significance of, and properly weigh evidence concerning, whether the adverse economic effect of the Development Program was outweighed by the contribution of the Development Program, as required by 30-A M.R.S. § 5223(2); and

(D) improperly authorized the Development Program by resolution rather than by ordinance as required by the Town's charter and improperly included provisions in the Development Program not allowed by State statute.

(Compl. at 14.)

The Town initially moved to dismiss Count II on the grounds that Rule 80B provides the exclusive means of judicial review of a government action. In their reply to the plaintiffs' opposition, however, the Town contends that whether an action for declaratory judgment may be brought as an independent cause of action "is a distinction without a difference." (Def.'s Rep. Mot. to Dismiss at 2.) Regardless of the plaintiffs' grounds, the Town requests that this court apply the same "procedural limitations and expedited time frames." (Id.) The Town expressed concern that the plaintiffs intend to seek unlimited discovery.[1] (Id. at 3.)

---

[1] The Town asserts that the plaintiffs' declaratory judgment claim is merely an attempt to conduct unlimited discovery and delay the Rule 80B claim. (Def.'s Rep. Mot. to Dismiss at 3.); see Anastos v. Town of Brunswick, No. CV-10-096, 2010 Me. Super. LEXIS 81 (Me. Super. Jun. 7, 2010), appeal docketed, No. CUM-10-363 (Jul. 2, 2010) (addressing a challenge to the Town's decision to create the same Development Program and the credit enhancement TIF involved in this case).

CONCLUSION

The parties do not dispute that the plaintiffs may bring an action for declaratory judgment to challenge the Town's decision in its legislative capacity. F.S. Plummer Co., Inc. v. Town of Cape Elizabeth, 612 A.2d 856, 859 (Me. 1992). Further, this court issued an order specifying the future course of proceedings on July 22, 2010. The order limited discovery and designation of experts. The plaintiffs filed their combined Rule 80B and declaratory judgment summary disposition brief and the Rule 80B record and the defendant has responded.

The entry is

The Defendant's Motion to Dismiss is DENIED.

Date: 3/15/11

Nancy Mills
Justice, Superior Court

Date Filed _03-03-10_  CUMBERLAND  Docket No. _AP-10-10_
County

Action _____80B Appeal_____

BRUNSWICK FAIRFIELD, LLC  TOWN OF BRUNSWICK
MAINE COURSE MANAGEMENT COMPANY, LLC  JHR DEVELOPMENT OF MAINE, LLC - PII
AUSTIN HOTELS, LLC  MAINE & NOBLE, LLC - PII
KAREN KLATT  NOBLE STREET, LLC - PII

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| KENNETH M. COLE, III, ESQ.<br>NATALIE L. BURNS, ESQ.<br>TEN FREE STREET<br>P.O. BOX 4510<br>PORTLAND, ME 04112 | NICHOLAS LIVESAY, ESQ.<br>JOHN AROMANDO ESQ (TOWN OF BRUNSWICK)<br>PIERCE ATWOOD<br>ONE MONUMENT SQUARE<br>PORTLAND ME 04101<br><br>JOHN MONCURE ESQ (JHR, MAINE & NOBLE, LLC &<br>MONCURE & BARNICLE          NOBLE ST. LLC)<br>PO BOX 636<br>BRUNSWICK ME 04011<br>FRANK GAETA, ESQ. (VISITING ATTY -<br>                    MAINE & NOBLE/NOBLE ST.) |

Date of
Entry

STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  DOCKET NO. AP-10-010


BRUNSWICK FAIRFIELD,
LLC, et al.,

         Plaintiffs

v.                                                DECISION AND ORDER


TOWN OF BRUNSWICK,

         Defendant

and

JHR DEVELOPMENT OF
MAINE, LLC, et al.,

         Parties-in-Interest


The plaintiffs, Brunswick Fairfield, LLC, Maine Course Management Company, LLC, Austin Hotels, LLC, and Karen Klatt bring this action pursuant to Rule 80B. The plaintiffs appeal the decision of the Town of Brunswick's Town Council to approve by resolution the Town of Brunswick Municipal Development and Tax Increment Financing District (District) and the Development Program for the Brunswick Downtown Municipal Development and Tax Increment Financing District (Development Program), with a credit enhancement agreement. The plaintiffs also seek

1

a declaratory judgment that the Town failed to satisfy the requirements of 30-A M.R.S. § 5221, et seq. and the Town Charter.[1]

For the following reasons, the court declares that the Town of Brunswick Town Council's approval of the Development Program, the District, and Credit Enhancement Agreement by resolution complied with 30-A M.R.S. § 5221, et seq. and the Town Charter.

BACKGROUND

On March 1, 2010, the defendant, through the Town Council, approved by resolution the District and the Development Program. (Compl. ¶ 17.) Along with the District, the Development Program includes tax increment financing (a "TIF") with a credit enhancement provision for an inn that the parties-in-interest propose to construct within the District as part of a mixed-use development project known as Maine Street Station Project. (Compl. ¶ 23; Id. ¶¶ 13, 18; R. at 9.)

The District, along with the Development Program, encompasses nearly 90 acres of the downtown business district. The Development Program contemplates a redevelopment project in which downtown land, once contaminated with coal ash and which stood largely vacant for the past 30 years, will be remediated by the Town and then redeveloped by party-in-interest JHR Development of Maine, LLC ("JHR"). Included in the Development Program is the Maine Street Station Project, which

---

[1] The defendant moved to dismiss count II, the plaintiffs' request for a declaratory judgment. That motion was denied because the plaintiffs may bring an action for declaratory judgment to challenge the Town's decision when acting in its legislative capacity. F.S. Plummer Co., Inc. v. Town of Cape Elizabeth, 612 A.2d 856, 859 (Me. 1992). Because the plaintiffs challenge only the Town's legislative action and there appears to be no final agency action, the court dismisses count I of the plaintiffs' complaint, in which the plaintiffs request review pursuant to M.R. Civ. P. 80B. (Pls.' Rep. Mem. at 9-10.) The court will address the plaintiffs' request for declaratory judgment. LaBonta v. City of Waterville, 528 A.2d 1262, 1263-64 (Me. 1987).

2

includes five mixed-use buildings and a 54-room inn to be constructed, owned, and operated by JHR. (R. at 8.)[2]

The Development Program's terms state that the Town will apply some of the captured TIF revenues to the Town's costs for development. (R. at 8-10.) In addition to the Town's costs, the Development Program's terms assign a portion of the TIF revenues to JHR through a separate ten-year Credit Enhancement Agreement. (R. at 9.) JHR is to use these funds to help pay for the costs of development of the proposed inn. (Id.)

According to the proposed Credit Enhancement Agreement, beginning in fiscal year 2011-2012, over the ten-year period the Town will return to JHR a portion of the TIF revenues generated by the inn. (Id.) Over the first five years, the Town will return one hundred percent of the taxes paid. (R. at 16, 89.) Over the final five years, the percentage of the reimbursement decreases incrementally to fifty percent. (Id.) JHR indicated that the proposed Credit Enhancement Agreement is necessary to proceed with the Maine Street Station Project. (R. at 9.)[3]

On February 18, 2010, the Town published notice of a public hearing on the proposed District, Development Program, and Credit Enhancement Agreement. (R. at 23.) At the public hearing on March 1, 2010, three separate hotel operators, including some of the plaintiffs, presented evidence that JHR's proposed inn would compete

---

[2] Two of the mixed-use buildings are already constructed. They house retail, restaurant and office uses, and a new train station and visitor's center for the extended Amtrak service from Portland. (R. at 8.)

[3] David Markovchick, the Director of Economic and Community Development for the Town, informed the Council that he discussed the proposed new inn with the lender for JHR; the lender would not provide construction financing for the inn unless the Town approved the Credit Enhancement Agreement. (R. at 32.)

3

directly with existing hotels in Brunswick, would lower the already low occupancy rate at the existing hotels, and have substantial competitive advantage. (R. at 35-40.)

After the close of the public hearing, John Eldridge, the Town Finance Director, informed the Town Council that changes were made to the version of the Development Program and Credit Enhancement Agreement made available to the public in advance of the public hearing. (R. at 31, 432-38; compare R. at 84-99 with R. at 297-311.) Members of the public had not been informed of any of these changes prior to the close of the public hearing. The Town provided copies of the revised Credit Enhancement Agreement to the public at the March 1st hearing. The Town Council acknowledged the changes and discussed the proposals. (Id.) By resolution,[4] the Town Council voted to designate the District and approve the revised Development Program, including the Credit Enhancement Agreement. (R. at 34.)

The plaintiffs filed a combined Rule 80B and declaratory judgment action. Essentially, the plaintiffs challenge the validity of the entire Development Program and argue that:

(1) the Town failed to consider the impact of the proposed Development Program on competing businesses pursuant to 30-A M.R.S. § 5223(2);
(2) the Town failed to comply with the hearing requirements pursuant to 30-A M.R.S. § 5226(1);
(3) the original assessed value of the proposed TIF district exceeds the statutory limit in 30-A M.R.S. § 5223(3)(C): and
(4) the Town violated the Town Charter by approving the Credit Enhancement Agreement by resolution, rather than by ordinance, thus invalidating the entire Development Program.

---

[4] The Town apparently drafted the resolution before the public hearing. (R. at 254-56.)

## DISCUSSION

### I.  Standard of Review[5]

In an action for declaratory judgment, "the sole province of the court . . . is to determine whether the [Town] Council could rationally have adopted the [Development Program] in light of the evidence presented to it . . . ." McMillan v. City of Portland, 2005 Me. Super. LEXIS 164, *10 (Me. Super. Nov. 22, 2005) (Crowley, J.); see also LaBonta, 528 A.2d at 1265. Under the Declaratory Judgment Act, the court has the "power to declare rights, status and other legal relations whether or not further relief is or could be claimed." 14 M.R.S. § 5953 (2010). The court will not, however, substitute its judgment for the judgment of the legislative body. Adelman v. Town of Baldwin, 2000 ME 91, ¶ 22, 750 A.2d 577, 585.

Moreover, when operating in a legislative capacity, the Town Council is not required to make specific findings of fact and conclusions of law. McMillan, 2005 Me. Super. LEXIS at *9-10 (citing Carroll v. Town of Rockport, 2003 ME 135, ¶¶ 26-31, 837 A.2d 148, 156-157). Additionally, the court cannot remand the Town Council's decision for further findings of fact or conclusions of law. Id. at *10.

---

[5] The plaintiffs, hotel owners, operators, and managers and a resident of Brunswick claim that they participated in the hearings before the Town Council and are directly affected by the Development Program and assert that they have standing to challenge the Town's decision. See Halfway House, Inc. v. City of Portland, 670 A.2d 1377, 1381 (Me. 1996) (holding that potential economic injury that results from government action is sufficient to confer standing). The court questions whether Ms. Klatt's status as a resident and taxpayer alone gives her standing in this action. (See Pls.' Mem. at 9.) The relief sought by Ms. Klatt may be characterized as preventative rather than remedial because of, for example, the duration of the payments pursuant to the credit enhancement agreement. McCorkle v. Town of Falmouth, 529 A.2d 337, 338 (Me. 1987); Buck v. Town of Yarmouth, 402 A.2d 860, 861-62 (Me. 1979). The Town does not challenge Ms. Klatt's standing to sue.

II.    Compliance with 30-A M.R.S. § 5223(2)

The plaintiffs assert that the Town failed to comply with 30-A M.R.S. § 5223(2) because it did not balance the benefits of the proposed Development Program with the impact on their businesses. The Town claims that it complied with the statute, which only requires that the municipal legislature "consider" the impact on other businesses, and nothing more.

According to 30-A M.R.S. § 5223(2) (2010):

> Before designating a development district within the boundaries of a municipality, or before establishing a development program for a designated development district, the legislative body of a municipality must consider whether the proposed district or program will contribute to the economic growth or well-being of the municipality or to the betterment of the health, welfare or safety of the inhabitants of the municipality . . . If an interested party claims at the public hearing that the proposed district or program will result in a substantial detriment to that party's existing business in the municipality and produces substantial evidence to that effect, the legislative body must consider that evidence. When considering that evidence, the legislative body also shall consider whether any adverse economic effect of the proposed district or program on that interested party's existing business in the municipality is outweighed by the contribution made by the district or program to the economic growth or well-being of the municipality or to the betterment of the health, welfare or safety of the inhabitants of the municipality.

30-A M.R.S. § 5223(2) (2010). The "'primary purpose in interpreting a statute is to give effect to the intent of the Legislature.'" Allied Res., Inc. v. Dep't of Pub. Safety, 2010 ME 64, ¶ 11, 999 A.2d 940, 943 (quoting Rich v. Dep't of Marine Res., 2010 ME 41, ¶ 7, 994 A.2d 815, 817-18). "When statutory language is unambiguous, '[w]e discern legislative intent from the plain meaning of the statute and the context of the statutory scheme. . . All words in a statute are to be given meaning, and none are to be treated as surplusage if they can be reasonably construed.'" Allied Res., Inc., 2010 ME 64, ¶ 15, 999 A.2d at 944 (quoting Cobb v. Bd. of Counseling Prof'ls Licensure, 2006 ME 48, ¶ 11, 896 A.2d 271,

6

275). The language of the statute involved is unambiguous and the court must look only to the plain meaning of the statute.

Title 30-A, Sections 5221-5235 provide municipalities with development tools to improve and broaden the tax base, and provide new employment opportunities. Id. §§ 5221, 5223. The statute authorizes municipalities to designate development districts within their boundaries and adopt development programs for each development district. Id. §§ 5223, 5224. A development program is "a statement of means and objectives designed to provide new employment opportunities, retain existing employment, improve or broaden the tax base, construct or improve the physical facilities and structures or improve the quality of pedestrian and vehicular transportation . . . ." Id. § 5222(7).

The legislative body must consider the impact on other businesses only if an interested party produces "substantial evidence" that the proposed development "will result in a substantial detriment to that party's existing business. . . ." 30-A M.R.S. § 5223(2). The legislative body must consider the impact of the proposed development on other businesses and must consider whether any adverse economic effect is outweighed by the contribution made by the district or program. 30-A M.R.S. § 5223(2). "Consider" means "think about seriously" or "take into account." WEBSTER'S II NEW COLLEGE DICTIONARY 240 (2001).

From the evidence before it, the Town could have rationally found that the benefits of the proposed Development Program outweighed the potentially negative impacts on existing businesses. The benefits of the Development Program included redeveloping a vacant area of the Town, providing new jobs, increasing the Town's tax base, attracting new businesses, and building a lasting infrastructure for the future. (R. at 8-10, 30, 32-33.) Additionally, the TIF district will result in a tax shift, which will save

7

the Town tax revenue without losing State funding. (R. at 18.) In considering the benefits of the Development Program, the Town also necessarily considered the benefits of the Credit Enhancement Agreement, because it found that it is essential to the Development Program. (R. at 9, 32.) See LaBonta, 528 A.2d at 1265 (holding that "[t]he test for the court's review of the city council's rezoning action is whether 'from the evidence before it the city council could have determined that the rezoning was in basic harmony with the [comprehensive] plan....'") (citing Haines v. City of Phoenix, 151 Ariz. 286, 727 P.2d 339, 344 (Ariz. App. 1986)) (emphasis original).

The Town Council also had evidence before it of the impact the proposed development would have on other businesses. The impact evidence submitted by the plaintiffs included: (1) a report of occupancy rates for hotels in the Brunswick area (R. at 38-39); (2) written and oral testimony from Brunswick hotel owners, Mr. Anastos and Linwood Austin, discussing the occupancy data and expressing concern about the impact on their existing hotels (R. at 29, 35-37, 40, 407-10, 413-14); and (3) an email from Mr. Anastos to the Town Council expressing concern about the effect of the Credit Enhancement Agreement on the Town's innkeepers (R. at 376). Additionally, other members of the public expressed concern that the proposed Credit Enhancement Agreement was unfair to existing hotel owners. (R. at 415-417, 426-428.) There is no indication that the Town Council failed to consider this evidence in making its determination.

Additionally, the plaintiffs did not present evidence that the proposed Development Program would be a substantial detriment to their businesses. See 30-A M.R.S. § 5223(2). The evidence submitted by the plaintiffs provided that their current occupancy rates were low. (R. at 38-39.) Beyond asserting that the tax rebate was unfair because the plaintiffs have never received any tax breaks, the plaintiffs speculate about

8

potential harm to their businesses. The Town complied with the mandate of section 5223(2) and concluded that the benefits of the Development Program outweighed the speculative impact the Program would have on existing businesses.[6]

III.    Compliance with the Statutory Hearing Requirements

The plaintiffs claim that the Town denied them a reasonable opportunity to present testimony because the Town introduced changes to the proposed Development Program[7] after the close of the public meeting. Pursuant to 30-A M.R.S. § 5226(1):

---

[6] The Town expressly found that the benefits of the proposed development outweighed the impact on existing businesses. In it's Resolution, the Town including a statement of findings, which states:

**Section 1.** The Town hereby finds and determines that:

...

(d) Designation of the District and pursuit of the Development Program will generate substantial economic benefits for the Town and its residents, including employment opportunities, broadened and improved tax base and economic stimulus, and therefore the District and the Development Program and the Maine Street Station Project and the Town's TIF improvements described therein constitute a good and valid public purpose[6] and will contribute to the economic growth or well-being of the inhabitants of the Town or to the betterment of the health, welfare or safety of the inhabitants of the Town, and <u>any adverse economic effect on or detriment to any existing business is outweighed by the contribution expected to be made through the Development Program and the improvements described therein to the economic growth or well-being of the Town and the betterment of health, welfare, and safety of its inhabitants.</u>

(R. at 25 (emphasis added).)

[7] According to the Plaintiffs, these changes included:

1.  funding was added for improvements to the intersection of Maine Street and Bath Road, an intersection not located within the Development District;

2.  funding was added for the construction of 39 parking spots near the Maine Street Station Project, to be used by Bowdoin College;

3.  a valuation limitation was added to the Development Program;

4.  the amount of acreage for the District was increased from 76.66 to 89.97 acres; and

5.  an offset provision was added to the Credit Enhancement Agreement.

(Pls.' Mem. at 7.)

The Town argues that the draft version of the Credit Enhancement Agreement and the Development Plan are substantively the same as the version adopted by the Town Council in all material respects. The first two "changes" were in the February 19th version of the Development Program. (See R. at 10, 240.) The valuation limitation in the February 19th

9

> Before designating a development district or adopting a development program, the municipal legislative body or the municipal legislative body's designee must hold at least one public hearing.

30-A M.R.S. § 5226(1) (2010).[8] Municipalities must give "[i]nterested parties ... a reasonable opportunity to present testimony concerning the proposed district or program at the hearing . . . ." 30-A M.R.S. § 5223(2) (2010). However, "[e]ven when the opportunity to be heard has constitutional dimensions, 'there must be a limit to individual argument in such matters if government is to go on.'" Crispin v. Town of Scarborough, 1999 ME 112, ¶ 20, 736 A.2d 241, 248 (quoting Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445 (1915)).

The plaintiffs had a reasonable opportunity to present testimony prior to the Town's decision. At the March 1 hearing, Mr. Anastos, Mr. Austin, and Ms. Klatt addressed the Town Council. (See R. at 407-10, 413-14, 417-20.) Mr. Anastos and Mr. Austin submitted written testimony to the Town Council. (R. at 35-40.) The Town allowed other individuals to comment at the public hearing and reopened the public meeting to allow additional comments when requested. (R. at 430.) Based on the record, the Town provided the plaintiffs with a reasonable opportunity to present testimony. See Crispin, 1999 ME 112, ¶ 21, 736 A.2d at 248 (noting that the plaintiffs

---

version included generic placeholders for the figures used calculate the original assessed value of the TIF district, which the was the same version the Town approved at the hearing. (R. at 250.) The difference in the amount of acreage, which the Town asserts was a typographical error, did not affect the plaintiffs' ability to provide testimony at the hearing. (R. at 249.)

The Town agrees that an offset provision was added to the Credit Enhancement Agreement. However, the offset provision appears to be a non-substantive change that actually benefits the Town by reducing the amount of TIF revenue to JHR. Accordingly, the Town did not deny the plaintiffs a reasonable opportunity to present testimony on the substantive components of the Development Program.

[8] The statute also provides that "[n]otice of the hearing must be published at least 10 days before the hearing in a newspaper of general circulation within the municipality." 30-A M.R.S. § 5226(1) (2010). Additionally, the FOAA requires public notice "for all public proceedings... [which] shall be given in ample time to allow public attendance." 1 M.R.S. § 406. The plaintiffs do not claim that notice was improper.

10

submitted "abundant written material to the Town Council, which the Town Council reviewed in advance of the hearing and considered during its deliberations" in finding that the Town provided for a reasonable opportunity to be heard).

This is not a case where the Town deliberately withheld relevant information. In Bureau v. City of Westbrook, the court found that the city deprived the plaintiffs of an opportunity to be heard by deliberately withholding relevant information. Bureau v. City of Westbrook, 2007 Me. Super. LEXIS 197, *11 (Me. Super. Sep. 28, 2007) (Delahanty, J.). In that case, the court stated "it should be axiomatic that the public be adequately informed of proposed action in order to have meaningful input to support or oppose an issue pending before a governmental agency or board." Id. at *10.[9] Because the city withheld relevant and public information, "[i]t [was] unknown how the plaintiffs may have planned or organized their opposition if they had the opportunity to utilize the missing information." Id. at *11. The record shows that the Town adequately informed the plaintiffs of the proposed development program and allowed the plaintiffs to provided meaningful input. The Town complied with the statutory hearing requirements under 30-A M.R.S. §§ 5223(2) and 5226(1).

---

[9] In a companion case, Mr. Anastos sought and was denied access to a feasibility study because it was not a public record. See Anastos v. Town of Brunswick, 2010 Me. Super. LEXIS 81, *19-20 (Me. Super. Jun. 7, 2010) (Crowley, J.), appeal docketed, No. CUM-10-363 (Jul. 2, 2010). As the Town claims, it does not appear that the Town Council relied on the feasibility study in fulfilling its obligations under section 5223(2). (Def.'s Br. at 28 n. 10.) According to the record, only one member of the Town Council saw the study. (Id.; Pl.'s Br. at 16 n. 13.) It does not appear that the Town Council prevented the plaintiffs from "present[ing] their positions based on the same information available to the municipal agency or board." Bureau, 2007 Me. Super. LEXIS 197 at *12.

11

IV.    Compliance with 30-A M.R.S. § 5223(3)(C)

The plaintiffs assert that the original assessed value[10] of proposed TIF district

violates 30-A M.R.S. § 5223(3)(C). That section provides, in relevant part:

> The original assessed value of a proposed tax increment financing district
> plus the original assessed value of all existing tax increment financing
> districts within the municipality may not exceed 5% of the total value of
> taxable property within the municipality as of April 1st preceding the date
> of the commissioner's approval of the designation of the proposed tax
> increment financing district.

30-A M.R.S. § 5223(3)(C) (2010). This provision does "not apply to approved downtown

tax increment financing districts . . . ." 30-A M.R.S. § 5223(3) (2010). The total original

assessed value of all existing TIF district and the proposed TIF district is 6.32% of the

total aggregate value of the Town. (Pls.' Br. at 20; see also R. at 21.) In order for the TIF

district to comply with the statute, it must be a downtown TIF district. "Downtown" is

defined as:

> the traditional central business district of a community that has served as
> the center of socioeconomic interaction in the community, characterized
> by a cohesive core of commercial and mixed-use buildings, often
> interspersed with civic, religious and residential buildings and public
> spaces, that are typically arranged along a main street and intersecting
> side streets and served by public infrastructure.

30-A M.R.S. § 5222(8) (2010).

The Town Council claims that it designated the core business district in

Brunswick, centered around Maine Street, as a downtown TIF district. (See R. at 19.)

The plaintiffs counter that the District, which will encompass 89.97 acres, exceeds the

traditional "downtown" area. (R. at 20.) The plaintiffs did not provide the court with

anything other than a map of the proposed District and a list of properties located in

that area. (R. at 19, 63-65.) Without more, this court cannot say whether the Town erred

---

[10] The original assessed value is "the assessed value of a development district as of March 31st
of the tax year preceding the year in which it was designated." Id. § 5222(13).

12

in designating the District a downtown TIF district. See LaBonta, 528 A.2d at 1265 (party challenging the council's action has the burden of proof).

## V. Compliance with the Town Charter

The plaintiffs claim that the Town violated the Town Charter when it approved the Credit Enhancement Agreement by resolution[11] and not by ordinance.[12] The Town asserts that the Town Charter does not apply to the Credit Enhancement Agreement. At issue is whether the Credit Enhancement Agreement is a contract for capital improvements or capital acquisitions.[13]

### A. Waiver

First, the Town claims that the Plaintiffs failed to preserve the issue for appeal because they never raised it during the public hearing. See Oliver v. City of Rockland, 1998 ME 88, ¶ 7, 710 A.2d 905, 907 ("[A] party in an administrative proceeding must raise any objections it has before the agency to ensure that the agency, and not the court, has the first opportunity to pass upon the claims of the parties."). The Plaintiffs contend that the March 1, 2010 hearing was not an administrative proceeding, but a legislative proceeding and therefore the same procedures do not apply. The court has determined that the Town was acting in its legislative capacity.

---

[11] Under the Town Charter, resolutions are not subject to overrule by public referendum; ordinances are subject to overrule. (Supp. R. at 21; Charter § 1101.) The Town Council may, on its own initiative, submit to the voters an ordinance, order, or resolve for repeal, enactment, or amendment by popular vote. (Supp. R. at 22; Charter § 1104.)

[12] The Town passed two ordinances in the course of this project. The 2007 Ordinance authorized the Town to execute the Joint Development Agreement with JHR and to fund the environmental remediation of the Maine Street Station project. (See R. at 51-56.) The 2009 Ordinance authorized the Town to fund the relocation of the People Plus Center, which operated in a building subsequently deeded to JHR. (See R. at 57-61.) The Town distinguishes these ordinances because they authorized the Town Manager to "negotiate, execute, and deliver" contracts involving Town-owned property and funded by bonds and notes. (R. at 52, 54 (2007 Ordinance §§ 3, 18); R. at 57 (2007 Ordinance §§ 1,2).)

[13] The Town also contends that the validity of the Credit Enhancement Agreement under the Town Charter does not affect the entire Development Program.

13

Under the Declaratory Judgment Act, the plaintiffs may bring an independent civil action for a declaratory judgment to challenge the construction of a statute, municipal ordinance, contract, or franchise. Minster v. Gray, 584 A.2d 646, 648 (Me. 1990) (citing Annable v. Board of Envtl. Protection, 507 A.2d 592, 595 (Me. 1986)); 14 M.R.S. § 5954. The plaintiffs need not go through the administrative process. Minster, 507 A.2d at 648. Because this is a legislative action and construction of the Town Charter is a matter of law, the court may consider the plaintiffs' claim.

B. Town Charter

30-A M.R.S. § 5223(1) provides: "If the municipality has a charter, the designation of a development district may not be in conflict with the provisions of the municipal charter." 30-A M.R.S. § 5223(1) (2010). Section 512[14] of the Town Charter states:

> The making of contracts for capital improvements or capital acquisitions, to be financed solely or partly by the issuance of bonds or notes, the making of contracts for capital improvements or capital acquisitions exceeding $1,000,000, and the making of contracts for capital improvements or capital acquisitions which irrevocably obligate the town to raise or appropriate, in a future fiscal year, funds to pay for all or part of the improvement or acquisition must be authorized by ordinance.

(Supp. R. at 13 (emphasis added).)

Based on the plain language of the section 512, the Credit Enhancement Agreement is not an acquisition or improvement contract. Under section 512, it is the Town that must receive the capital improvements or capital acquisitions. Otherwise, the first two phrases of section 512 do no make sense. Rudolph v. Golick, 2010 ME 106, ¶¶ 8-9, 8 A.3d 684, 686 ("The interpretation of a local ordinance is a question of law, and

---

[14] In 1997, the Town's residents voted to amend section 512, which previously required an ordinance to authorize "any contract providing for payments beyond the end of the fiscal year." (Def.'s Ex. C, § 3.) The explanation to the amendment states that the amendment "clarifies the requirement for ordinance authorization where the Town is obligated in future fiscal years on an improvement or acquisition contract." (Supp. R. at 13.)

14

we review that determination de novo. However, local characterizations or fact-findings as to what meets ordinance standards will be accorded substantial deference. We examine an ordinance for its plain meaning and construe its terms reasonably in light of the purposes and objectives of the ordinance and its general structure.") (citations omitted) (quotation marks omitted). The 2007 and 2009 ordinances approved support this interpretation. Both involved improvements to Town-owned property.

Under the Credit Enhancement Agreement, JHR would receive a portion of the TIF revenues to help pay for the costs of development beginning in fiscal year 2011-2012. (R. at 9.) To receive distributions, JHR must only pay its property taxes and document the costs of the inn project. (R. at 91.) JHR is not obligated to anything else and the Town receives no capital improvements or acquisitions as a result of the agreement.

Credit enhancement agreements are a means to permit municipalities to encourage growth and attract businesses. This Credit Enhancement Agreement serves as an incentive for JHR to invest in the Town. The Town did not violate the Town Charter by adopting the Credit Enhancement Agreement by resolution rather than by ordinance.

The entry is

Count I of the Plaintiffs' Complaint is DISMISSED.

On Count II of the Plaintiffs' Complaint, the Court declares that the Town of Brunswick Town Council's approval of the Development Program, the District, and Credit Enhancement Agreement by resolution complied with 30-A M.R.S. § 5221, et seq. and the Town Charter.

Date: March 18, 2011

Nancy Mills
Justice, Superior Court

15